1999-NMCA-110

987 P.2d 1172

**Mariah C. DAVIS, Plaintiff–Appellant,**

v.

**The BOARD OF COUNTY COMMISSIONERS OF DOÑA ANA COUNTY, Defendant–Appellee.**

**No. 19,176.**

Court of Appeals of New Mexico.

July 13, 1999.

Paul Bardacke, Kerry Kiernan, Peter S. Kierst, Eaves, Bardacke & Baugh, P.A., Albuquerque, for Appellant.

Thomas A. Sandenaw Jr., Leonard J. Piazza, Law Office of T.A. Sandenaw, Las Cruces, for Appellee.

William H. Carpenter, Cynthia A. Fry, Albuquerque, for Amicus Curiae New Mexico Trial Lawyers Association.

Henry F. Narvaez, William D. Slease, Danny W. Jarrett, Narvaez, Slease & Schamban, P.A., Albuquerque, for Amicus Curiae New Mexico Defense Lawyers Association.

## OPINION

BOSSON, J.

{1} As a matter of first impression under New Mexico common law, we decide whether an employer owes prospective employers and foreseeable third persons a duty of reasonable care not to misrepresent material facts in the course of making an employment rec-

ommendation about a present or former employee, when a substantial risk of physical harm to third persons by the employee is foreseeable. If such a duty exists, we further address and decide whether law enforcement officers can be liable for a breach thereof under the New Mexico Tort Claims Act, NMSA 1978, § 41-4-12 (1976) (the "Act"). Upon our review of these questions, we reverse, in part, both the district court's entry of summary judgment for the Board of County Commissioners (the County) and its denial of summary judgment for Plaintiff, and we remand for further proceedings.

**BACKGROUND**

{2} The following recitation of facts is taken from the cross-motions for summary judgment that include allegations set forth in the pleadings, as supplemented by excerpts from depositions and affidavits. Mesilla Valley Hospital (MVH), a psychiatric hospital in Doña Ana County, employs mental health technicians for a variety of patient-care functions, such as restraining patients, taking patients on walks, and providing staff coverage at night. MVH hired Joseph "Tinie" Herrera (Herrera) as a mental health technician on January 20, 1995. Plaintiff, a young woman undergoing psychiatric therapy, was admitted to MVH as a patient on February 26 of that same year, and Herrera was assigned to work with her. Plaintiff asserts that Herrera initially managed to ingratiate himself into her confidence, and then, over a period of about two weeks, Herrera subjected Plaintiff to escalating incidents of sexual harassment, sexual assault, and other physical abuse committed under the guise of psychiatric therapy.

{3} Herrera had Plaintiff's sleeping quarters moved from her assigned room to a semi-isolation room where access was easier for him. Herrera also directed Plaintiff to go to an isolation room that shielded Herrera from detection and allowed Herrera, through a small window, to monitor other employees. While Herrera had Plaintiff isolated and under his control, Plaintiff alleges that he sexually assaulted her and committed repeated acts of sexual harassment and battery upon her.

{4} Prior to working at MVH, Herrera was employed for some time as a detention sergeant and classification officer at the Doña Ana County Detention Center (Detention Center). According to Plaintiff, MVH's decision to hire Herrera was based in part on unqualified, favorable recommendations from Herrera's supervisors at the Detention Center, Frank Steele and Al Mochen. Steele was the director and Mochen was the captain and assistant director of the Detention Center, both of whom had supervisory authority over Herrera. The accuracy of these favorable recommendations goes to the heart of Plaintiff's suit against the County.

{5} Of particular importance to the accuracy of the recommendations is a report authored by Steele after Herrera was investigated for allegedly sexually harassing female inmates under his authority at the Detention Center. The Detention Center first became aware of sexual complaints against Herrera in 1993, when a female inmate alleged that Herrera had sexually harassed her. Steele gave Herrera a written reprimand based on the 1993 allegation which also indicated that an additional complaint of this nature may result in Herrera's termination. Thereafter, on February 4, 1994, another female inmate filed a sexual harassment grievance against Herrera for incidents that had occurred between 1990 and 1992. She alleged that Herrera had helped her in exchange for demanding and receiving sexual favors. Although Herrera denied the allegations, he was placed on administrative leave on February 8, 1994. Steele then had the County Sheriff's Department conduct an investigation of Herrera, and on April 5, 1994, Steele authored a report of the results of that investigation.

{6} According to Steele's report, Herrera was accused of inappropriate sexual behavior with female inmates that took various forms. The accusations included making statements with sexual overtones, and stating his desire for sex. Reportedly, Herrera received sexual favors from inmates in return for helping them. On more than one occasion, he was observed taking female inmates to his office and closing the door, allegedly for the purpose of conducting interviews. Steele's report also made specific reference to a pornographic video and condoms which were found

in Herrera's desk, and he was observed with underwear belonging to a juvenile.

{7} While not all the allegations against Herrera could be confirmed, the report concluded that Herrera's conduct and performance of duty had been "questionable" and "suspect." Accordingly, Steele recommended disciplinary action against Herrera seeking to have him suspended without pay as well as demoted and reassigned. On April 5, 1994, Steele informed Herrera that he intended to seek disciplinary action at a hearing scheduled for April 12, 1994.

{8} On April 8, 1994, Herrera resigned rather than proceed with the scheduled hearing. Upon his resignation, Herrera asked Steele for a letter of recommendation for prospective employment. On April 11, 1994, only six days after recommending discipline, Steele wrote a positive endorsement of Herrera that omitted any reference to either the reprimand, the subsequent allegations of sexual harassment, the results of the investigation, or the recommended discipline. The letter was written on county letterhead, which Steele signed as the Detention Center administrator, and stated:

To Whom It May Concern:

This letter will introduce to you, Joseph V. Herrera. I have had the distinct pleasure of working with Tinie Herrera for the past two years. In my opinion he is an excellent employee and supervisor for the Dona Ana County Detention Center. In developing social programs for the inmate population, he displayed considerable initiative and imagination. Tinie was instrumental in the Department's maintenance program and was involved in remodeling projects. I know that this Department will suffer for his leaving. Employees of his caliber are difficult to find. I am confident that you would find Tinie to be an excellent employee. Should you need verbal confirmation of his ability, I would deem it a pleasure to respond to any inquiries that you may have.

Sincerely,

[Signed]

Frank A. Steele

Detention Administrator

DACDC

{9} On December 5, 1994, Herrera applied for employment with MVH and included Steele's letter of recommendation. According to Plaintiff, MVH called the Detention Center seeking further information about Herrera, and Mochen told MVH that Herrera was a good person and a hard worker whom he would definitely rehire. Mochen was aware of Herrera's past when he allegedly gave this verbal recommendation. Mochen denies talking to MVH. According to Plaintiff, MVH's decision to hire Herrera was based in part on these unqualified, favorable recommendations from Steele and Mochen, an allegation which, as yet, remains unproven, and as with other causation issues, remains part of Plaintiff's burden to prove at trial.

{10} Plaintiff sued the County for negligent misrepresentation alleging that the misinformation supplied by the Detention Center employees, Steele and Mochen, proximately caused Herrera to be hired at MVH and Plaintiff to be assaulted. After discovery was partially completed, Plaintiff requested partial summary judgment in her favor based on the legal contentions that: (1) Steele and Mochen were law enforcement officers under the Act; (2) the allegations of negligent misrepresentation against them stated a claim under the Act; and (3) Steele and Mochen were acting within the scope of their duties as law enforcement officers when they made the written and oral recommendations of Herrera. The County filed a cross-motion for summary judgment based on the following contentions: (1) the Act did not waive immunity for these alleged acts by these individuals, Steele and Mochen; (2) the County and its employees owed no legal duty to Plaintiff; (3) employment references enjoyed a statutory immunity from suit under state law; and (4) the acts of Steele and Mochen, as alleged were outside the scope of their duties under the Act. The district court denied Plaintiff's motion but granted the County's cross-motion, ruling that the County owed no duty of care to Plaintiff and was immune from suit under the Act for the acts of Steele and Mochen. Plaintiff appeals from both decisions of the district court.

## STANDARD OF REVIEW

{11} Summary judgment is warranted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See Design Prof'ls Ins. Cos. v. St. Paul Fire & Marine Ins. Co.*, 1997–NMCA–049, ¶ 8, 123 N.M. 398, 940 P.2d 1193. The district court's denial of Plaintiff's motion for summary judgment, contained in the same formal written order granting the County's motion, is a final, appealable order. *See id.* ¶ 24. We review whether there was sufficient support for the denial of Plaintiff's motion. *See id.* ¶ 26. The existence of a legal duty is a question of law that this Court reviews de novo. *See Calkins v. Cox Estates,* 110 N.M. 59, 62, 792 P.2d 36, 39 (1990).

## DISCUSSION

### Employer's Legal Duty Not to Make Negligent Misrepresentations in Employment References

{12} The County argues that the law does not require employers to divulge their reasons for an employee's termination or resignation and that it would be against public policy to impose such a duty, especially in favor of an unknown third party outside the line of communication with a prospective employer. Plaintiff agrees that employers may remain silent if they wish. *See generally Rummel v. Edgemont Realty Partners, Ltd.*, 116 N.M. 23, 26, 859 P.2d 491, 494 (Ct.App. 1993) (stating that, absent a special relationship, there is no duty to protect others from harm caused by criminal acts of third persons). However, once employers elect to give references and offer recommendations, then, according to Plaintiff, employers have a common-law duty to exercise reasonable care so as not to misrepresent an employee's record when, to do so, would create a foreseeable risk of physical injury to third parties.

{13} Thus, two initial questions are before this Court. First, we must consider whether employers who do not remain silent, those electing to recommend employees, owe any such duty of reasonable care in regard to what they say and how they say it. If so, then we must decide whether such employers owe a duty of care to third parties as well as the prospective employer to whom the recommendation is given. We limit our discussion to the present circumstances involving a substantial, foreseeable risk of physical harm to third parties by the employee if reasonable care is not exercised about what is said when an employer elects to make an unqualified recommendation, and we decide that employers do owe such a duty to third parties.

{14} We begin with general principles. As our Supreme Court has succinctly stated, "Policy determines duty." *Torres v. State,* 119 N.M. 609, 612, 894 P.2d 386, 389 (1995). Based on considerations of policy, the court determines whether a defendant owes a duty of care to a class of persons with respect to a particular type of risk of harm. *See Solon v. WEK Drilling Co.*, 113 N.M. 566, 570, 829 P.2d 645, 649 (1992) (stating the question as whether a duty is owed "toward a particular person or class of persons protected against an unreasonable risk of harm from an actor's conduct"); *see also Romero v. Byers,* 117 N.M. 422, 425, 872 P.2d 840, 843 (1994); *Calkins,* 110 N.M. at 61, 67, 792 P.2d at 38, 44; *Ramirez v. Armstrong,* 100 N.M. 538, 541, 673 P.2d 822, 825 (1983), *overruled in part by Folz v. State,* 110 N.M. 457, 460, 797 P.2d 246, 249 (1990). *See generally* 3 Fowler V. Harper et al., *The Law of Torts* § 18.8 (2d ed.1986) [hereinafter Harper]; W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 53, at 357–58 (5th ed.1984) [hereinafter Prosser]; William L. Prosser, *Palsgraf Revisited,* 52 Mich. L.Rev. 1 (1953). For guidance on questions of policy, we look to general legal propositions we may infer from legal precedent within our own state and from other jurisdictions, and we look as well to any relevant statutes, learned articles, or other reliable indicators of "community moral norms and policy views[.]" *Sanchez v. San Juan Concrete Co.,* 1997–NMCA–068, ¶ 12, 123 N.M. 537, 943 P.2d 571.

{15} As an accepted legal proposition, there is generally no affirmative duty to prevent criminal acts by a third party in the absence of some special relationship or statutory duty. *See Ciup v. Chevron U.S.A., Inc.,* 122 N.M. 537, 539, 928 P.2d 263, 265 (1996); *see also* Restatement (Second) of

Torts § 314, at 116 (1965); Harper, *supra,* § 18.6, at 718–19; Prosser, *supra,* § 56, at 375. However, it is also a general proposition that " 'every person has a duty to exercise ordinary care for the safety of others[,]' " when that person does choose to act. *Lerma ex rel. Lerma v. State Highway Dep't,* 117 N.M. 782, 784, 877 P.2d 1085, 1087 (1994) (quoting *Knapp v. Fraternal Order of Eagles,* 106 N.M. 11, 13, 738 P.2d 129, 131 (Ct.App.1987)); *see Cobos v. Doña Ana County Hous. Auth.,* 1998–NMSC–049, ¶ 16, 126 N.M. 418, 970 P.2d 1143; Harper, *supra,* § 18.6, at 712–13; Prosser, *supra,* § 56, at 373–74. Assuming other policy considerations are satisfied, a duty to exercise ordinary care, where one otherwise would not exist, may arise when a person voluntarily undertakes a course of conduct which, in the absence of due care, may foreseeably injure others as a natural and probable consequence of the person's conduct. *See Calkins,* 110 N.M. at 63–64, 792 P.2d at 40–41; *see also Cobos,* 1998–NMSC–049, ¶ 16, 126 N.M. 418, 970 P.2d 1143 (holding that once county undertakes a subsidized private housing program, it assumes a duty of care in the performance of safety inspections of privately owned housing).

{16} Few jurisdictions have directly addressed duty in the context of misleading employer references. Of those few, several have concluded that, although employers generally may not have an affirmative duty to disclose negative information about employees, employers may be held liable for negligent misrepresentations, or misleading half-truths, about those employees who present a foreseeable risk of physical harm to others, and the duty of care extends to third parties foreseeably at risk. *See Gutzan v. Altair Airlines, Inc.,* 766 F.2d 135, 140 (3d Cir.1985) (interpreting Pennsylvania law and recognizing a cause of action for negligent misrepresentation, citing to the Restatement, *supra,* §§ 311, 324A); *Randi W. v. Muroc Joint Unified Sch. Dist.,* 14 Cal.4th 1066, 60 Cal.Rptr.2d 263, 929 P.2d 582, 587 (1997) (en banc) (recognizing the tort of negligent misrepresentation, relying on the Restatement, *supra,* §§ 310, 311); *Golden Spread Council, Inc. v. Akins,* 926 S.W.2d 287, 291 (Tex.1996) (recognizing a cause of action for negligent misrepresentation causing physical harm to a third party, citing to the Restatement, *supra,* § 302(B), when local Boy Scout Council recommended a scout master the Council knew or should have known was a sexual deviant). *But see Cohen v. Wales,* 133 A.D.2d 94, 518 N.Y.S.2d 633, 634 (N.Y.App.Div.1987) (refusing with only limited discussion to recognize a duty in recommending former employee "where another party is responsible for the actual hiring"). *See generally* Anthony J. Sperber, Comment, *When Nondisclosure Becomes Misrepresentation: Shaping Employer Liability for Incomplete Job References,* 32 U.S.F. L.Rev. 405 (1998).

{17} The recent California Supreme Court opinion in *Randi W.,* 14 Cal.4th 1066, 60 Cal.Rptr.2d 263, 929 P.2d 582, is closely analogous and provides persuasive guidance for our case. In *Randi W.,* various officials at different school districts gave gratuitous recommendations "containing unreserved and unconditional praise" of a former employee, despite their knowledge of complaints involving sexual misconduct at his prior employment. *See id.* at 584. The employee was subsequently hired as a vice-principal where he was accused of sexually assaulting a thirteen-year-old student. *See id.* at 585. A unanimous court adopted Sections 310 and 311 of the Restatement, holding that the recommending school officials owed a duty of care to third-party students "not to misrepresent the facts in describing the qualifications and character of a former employee, if making these misrepresentations would present a substantial, foreseeable risk of physical injury to the third persons." *Randi W.,* 60 Cal.Rptr.2d 263, 929 P.2d at 591. "[H]aving volunteered this information, defendants were obliged to complete the picture by disclosing material facts regarding charges and complaints of [the teacher]'s sexual improprieties." *Id.* 60 Cal.Rptr.2d 263, 929 P.2d at 592 (citing and paraphrasing *Garcia v. Superior Court,* 50 Cal.3d 728, 268 Cal.Rptr. 779, 789 P.2d 960 (1990)).

{18} The *Randi W.* opinion expressly relied on Sections 310 and 311 of the Restatement. Section 310 states a rule for intentional misrepresentation which is not directly relevant here. Comments c and d of Section 310 involving liability to third persons are

incorporated into Section 311. *See* § 311 cmt. f. Section 311 states:

**Negligent Misrepresentation Involving Risk of Physical Harm**

**(1) One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results**

**(a) to the other, or**

**(b) to such third persons as the actor should expect to be put in peril by the action taken.**

**(2) Such negligence may consist of failure to exercise reasonable care**

**(a) in ascertaining the accuracy of the information, or**

**(b) in the manner in which it is communicated.**

{19} The rule of Section 311 extends to anyone undertaking to give information to a person who "knows or should realize that the safety of the person of others may depend upon the accuracy of the information." *Id.* § 311 cmt. b; *see also id.* § 310 cmts. c & d. A misrepresentation under Section 311 may breach a duty of care owed not only to the person to whom it is addressed, and whose conduct it is intended to influence, but also a duty of care owed to third parties whom the speaker should recognize as likely to be imperiled by action taken in reliance upon the misrepresentation. *See id.* § 310 cmt. c.

{20} In the context of this case, we accept the principles set forth in Section 311, as they apply to an employer's duty of care in making employment references and the circumstances under which that duty extends to foreseeable third parties. We find those principles harmonious with the general propositions of New Mexico law that govern duty of care and duty to third parties. Cases cited by the County for a narrower rule are easily distinguished or unpersuasive. *See, e.g., Janssen v. American Hawaii Cruises, Inc.,* 69 Haw. 31, 731 P.2d 163 (1987); *Murdock v. Higgins,* 454 Mich. 46, 559 N.W.2d 639 (1997); *Moore v. St. Joseph Nursing Home, Inc.,* 184 Mich.App. 766, 459 N.W.2d 100 (1990); *Cohen,* 518 N.Y.S.2d at 633; *Hoicowitz v. Positive Educ. Program,* 96 Ohio App.3d 363, 645 N.E.2d 89 (1994). In the main, these cases involve situations in which the employer either did not offer a recommendation, or was not sued for the tort of negligent misrepresentation. These opinions do support the proposition that an employer may elect *not* to make a reference, even if it realizes that the information in its possession would be helpful to the prospective employer. Of course, having elected to speak out in Herrera's favor, Steele and Mochen cannot take advantage of any such rule, and it is not before this Court for consideration. *Cohen,* 133 A.D.2d 94, 518 N.Y.S.2d 633, also cited by the County, appears to be contrary to our holding here. But the court does not supply the reasoning supporting its decision, and we find it unpersuasive insofar as it is contrary to our holding.

{21} Applying the foregoing principles to the case before us, we see nothing in the facts as alleged that would make the assault and battery suffered by Plaintiff either too remote as a matter of policy or unforeseeable as a matter of law. The County's agents could have remained silent in response to requests for information about Herrera. Instead, they elected to recommend him in a manner distorted by misrepresentations and half-truths. The employment recommendations of Steele and Mochen provided unqualified praise of Herrera as an excellent employee of a caliber that is "difficult to find," and yet they omitted disciplinary action both taken and recommended by these same officers against Herrera. The disciplinary action came as a result of allegations, a subsequent investigation, and a resulting report in which Steele was directly involved, which constitutes far more than mere gossip or innuendo. The information in the report concerned abuse of power and sexual abuse of women who were directly under Herrera's control at the Detention Center which bears a direct correlation to the potential risks female patients would incur if they were placed under Herrera's control at MVH. The parallels are compelling. We are not persuaded that reasonable people, who had the information possessed by Steele and Mochen, could not have foreseen potential victims like Plaintiff, and could not have foreseen how the omission of objective information, like

Steele's report and the disciplinary actions taken, would not pose a threat of physical harm to persons like Plaintiff. We emphasize that ultimately the question of foreseeability will be for the jury to decide. We only decline to say categorically that such injuries to people like Plaintiff are unforeseeable as a matter of law. *See Calkins,* 110 N.M. at 62, 792 P.2d at 39; *cf. Solon,* 113 N.M. at 573, 829 P.2d at 652; *Palsgraf v. Long Island R.R. Co.,* 248 N.Y. 339, 162 N.E. 99 (1928). And we are not persuaded that as a matter of policy, recovery should be denied on the basis that "it is not reasonable to impose a duty [on the County] to avoid a risk" to victims like Plaintiff. *Solon* 113 N.M. at 573, 829 P.2d at 652 (Ransom, J., specially concurring).

{22} Thus, in applying the principles set forth in Section 311 of the Restatement, we determine that Steele and Mochen did owe a duty of care, once they elected to make employment recommendations for Herrera, in regard to what they said and what they omitted from their references. We also conclude that such a duty was owed to Plaintiff as a third-party victim, under the circumstances of this case. We intend our holding to be narrow. We decline to speculate on how different facts and circumstances, such as the lapse of time between the referral and the assault, might affect this duty, and where "social policy" might compel us "to draw the line against otherwise unlimited liability." *Solon* 113 N.M. at 569, 573, 829 P.2d at 648, 652 (citing Prosser, *supra*). Plaintiff has a claim pursuant to that duty unless the County can persuade us by additional arguments that the duty of care should not apply in this case. We now turn to those arguments.

{23} The County argues that Plaintiff's claim is not actionable because of Plaintiff's lack of reliance. It is true, of course, that Steele and Mochen never represented any information about Herrera directly to Plaintiff and, of course, Plaintiff could not have relied on the statements made to MVH, that Herrera was an "excellent employee," of which she was not aware. However, Plaintiff's lack of reliance is immaterial.

{24} A victim of physical violence need not rely on the negligent misrepresentation, or even be a party to it, as long as the injury is a result of the *recipient's* reliance on the employer's misrepresentation. *See* Restatement, *supra,* §§ 310 cmt. c, 311 cmt. d, illus. 8 & 324A; *see also Randi W.,* 60 Cal.Rptr.2d 263, 929 P.2d at 594. In this case, Plaintiff has presented evidence to support the allegation, if found credible by a jury, that her injury resulted from MVH's reliance on the misleading employee reference from the County's supervisory employees, and this is sufficient to present an actionable claim under these circumstances. *See Gawara v. United States Brass Corp.,* 63 Cal.App.4th 1341, 74 Cal.Rptr.2d 663, 670 (1998) (noting that *Randi W.* requires a plaintiff alleging negligent misrepresentation to "establish actual reliance by an intermediary").

{25} The County makes a separate argument that it had no duty to protect Plaintiff from harm caused by Herrera because there was no special relationship between the County and Plaintiff. That argument might have been availing if the County had chosen to remain silent. *See, e.g.,* Restatement, *supra,* § 314 (stating, absent a special relationship, there is no duty to act for the protection of others); Harper, *supra,* § 18.6, at 718–19; Prosser, *supra,* § 106, at 375. But once the County elected to offer a recommendation, it had a corresponding duty to exercise reasonable care. *See Calkins,* 110 N.M. at 62–63, 792 P.2d at 39–40; Restatement, *supra,* §§ 311, 324A; Harper, *supra,* § 18.6, at 712–17.

{26} The County further argues that, taken literally, Steele and Mochen did not misrepresent anything to MVH, because MVH never specifically asked for the reasons for Herrera's resignation. However, "if the [employer] does speak, he must disclose enough to prevent his words from being misleading." Prosser, *supra,* § 56, at 738; *see also Randi W.,* 60 Cal.Rptr.2d 263, 929 P.2d at 592; Restatement, *supra,* §§ 311, 324A; Harper, *supra,* § 18.6, at 713–17. We are not persuaded by the County's position on this point. "In other words, half of the truth may obviously amount to a lie, if it is understood to be the whole." Prosser, *supra,* § 106, at 738; *see also* Restatement, *supra,*

§ 529 ("Representation Misleading Because Incomplete").

{27} Finally, the County argues that public policy should dissuade us from imposing such a duty on employers. According to the County, a duty of accurate representation will become an invitation to litigate. In our view, however, we have sufficiently restricted the duty so as not to encourage extensive litigation. We do, however, find intriguing another of the County's policy arguments that any expansion of a tort duty will have a chilling effect on employer willingness to give references, whether good or bad, and society's interest in reliable information will suffer.

{28} We agree with the County that public policy supports full and accurate disclosure of non-confidential information by employers, and we seek to encourage employers in that direction. Full and accurate disclosure regarding employees with violent and dangerous propensities promotes a safe work environment, and a productive workforce benefits both employees and employers. The past several years have seen considerable academic commentary embracing this same policy of encouraging full and accurate disclosure by employers. *See* Markita D. Cooper, *Beyond Name, Rank, and Serial Number: "No Comment" Job Reference Policies, Violent Employees and The Need for Disclosure–Shield Legislation,* 5 Va. J. Soc. Pol'y & L. 287 (1998); *see also* Sandi R. Wilson, *Employer Immunity for Employment References: Maybe, Maybe Not,* 49 S.C. L.Rev. 1171 (1998); Alex B. Long, Note, *Addressing the Cloud Over Employee References: A Survey of Recently Enacted State Legislation,* 39 Wm. & Mary L.Rev. 177 (1997). One incentive suggested to encourage employer disclosure is legislation to shield employers from employee defamation lawsuits when making a good-faith effort to produce accurate information about their former employees. *See* Cooper, 5 Va. J. Soc. Pol'y 287; 8 West Group Employment Coordinator, ¶ EP–22, 935 to 935.50 (1996) (describing employer immunity statutes from twenty-one states); *see also* Ann M. Barry, Comment, *Defamation in the Workplace: The Impact of Increasing Employer Liability,* 72 Marq. L.Rev. 264 (1989); Deborah Daniloff, Note, *Employer Defamation: Reasons and Remedies for Declining References and Chilled Communications in the Workplace,* 40 Hastings L.J. 687 (1989); Bradley Saxton, *Flaws in the Laws Governing Employment References: Problems of "Overdeterence" and a Proposal for Reform,* 13 Yale L. & Pol'y Rev. 45 (1995) (advocating a limited affirmative duty on employers to disclose even without volunteering a referral); Janet Swerdlow, Note, *Negligent Referral: A Potential Theory For Employer Liability,* 64 S. Cal. L.Rev. 1645 (1991) (same).

{29} New Mexico's common law reflects just such a policy of encouraging employer disclosure by recognizing a "qualified or conditional privilege [against a defamation claim] to make statements about its employee or former employee if for a proper purpose and to one having a legitimate interest in the statements." *Baker v. Bhajan,* 117 N.M. 278, 282, 871 P.2d 374, 378 (1994). The privilege against defamation claims provides an employer qualified immunity for good-faith disclosures about employee performance, thereby encouraging such disclosure for the benefit of prospective employers and third parties who may be placed in harm's way without it. *See Zuniga v. Sears, Roebuck & Co.,* 100 N.M. 414, 417–18, 671 P.2d 662, 665–66 (Ct.App.1983). The common-law privilege is not at issue in this appeal because it is designed to protect employers against defamation lawsuits by former employees. *See Gengler v. Phelps,* 92 N.M. 465, 467, 589 P.2d 1056, 1058 (Ct.App.1978) (adopting the privilege and quoting Restatement, *supra,* § 584, taken from the section on "Defenses to Actions for Defamation" in the Restatement).

{30} In addition to the common law, New Mexico has recently added a statutory privilege, NMSA 1978, § 50–12–1 (1995), which states:

> When requested to provide a reference on a former or current employee, an employer acting in good faith is immune from liability for comments about the former employee's job performance. The immunity shall not apply when the reference information supplied was knowingly false or deliberately misleading, was rendered with

malicious purpose or violated any civil rights of the former employee.

The statute took effect in 1995 after the events that occurred in this case, and both parties agree it does not apply retroactively. The statute would appear to track much of the common-law privilege relating to defamation and good-faith comments in the employment context. But we do not construe the statute's meaning in this opinion because it is not directly before us.

{31} We acknowledge that, at the margins, the common-law duty we recognize in this opinion may discourage some employment referrals. But that impact should be minimal. The duty not to misrepresent applies only in cases of foreseeable physical harm. The vast majority of cases will involve pejorative information in the hands of an employer that does not create a risk of foreseeable physical harm and accordingly does not implicate this duty to disclose. When physical harm by the employee is foreseeable, the employer who discloses will be protected against defamation by the qualified privilege. However, even if some overly cautious employers are deterred unnecessarily from volunteering helpful information and elect to remain silent, we determine that silence may be preferable under these circumstances to what Steele and Mochen stand accused of in this case. In the face of silence from a former employer, the prospective employer can still conduct its own investigation; silence renders the employer no worse off. In contrast, the prospective employer who is misled may relax its own guard; it may not investigate as thoroughly, and may end up worse off than if it had received no information at all. *See Gutzan,* 766 F.2d at 141. On balance, therefore, the policy gains of imposing a duty not to misrepresent under these limited circumstances outweigh the potential consequences of inhibiting employer disclosure.

**Plaintiff's Suit for Negligent Misrepresentation by Law Enforcement Officers Satisfies the New Mexico Tort Claims Act**

{32} The question remains whether the County, a public employer, is immune from liability for violation of the common-law duty. In New Mexico, of course, tort liability against public entities for the negligence of their employees is limited to those circumstances under which the legislature has waived immunity from suit. *See* NMSA 1978, § 41-4-2(A) (1976). Among those specified waivers, the legislature has authorized suit under Section 41-4-12 of the Act, "for personal [or] bodily injury ... resulting from assault [or] battery ... when caused by law enforcement officers while acting within the scope of their duties." As one of the enumerated torts, battery by a third person as a result of an officer's negligence falls squarely within the narrow waiver of immunity under the Act. *See Blea v. City of Espanola,* 117 N.M. 217, 220, 870 P.2d 755, 758 (Ct.App.1994); *see also Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't,* 121 N.M. 646, 652, 916 P.2d 1313, 1319 (1996). In her complaint and the supplemental materials attached to the summary judgment motions, Plaintiff has stated just such a claim against the County. We emphasize that the immunity waiver at issue here is not for public officials as a whole, but only for law enforcement officers whose negligent misrepresentation cause injury by way of an enumerated tort.

{33} The County argues that negligent misrepresentation does not fit within the waiver of immunity under Section 41-4-12 because the term "negligent misrepresentation" is not specifically enumerated in the Act. We disagree with the County's argument. *See Ortiz v. New Mexico State Police,* 112 N.M. 249, 250-51, 814 P.2d 117, 118-19 (Ct.App.1991) (stating that absence of the words "negligent supervision" or "training" from Section 41-4-12 does not bar a claim).

{34} Negligent misrepresentation is a tort determined by the general principles of the law of negligence. *See R.A. Peck, Inc. v. Liberty Fed. Sav. Bank,* 108 N.M. 84, 88, 766 P.2d 928, 932 (Ct.App.1988); *Maxey v. Quintana,* 84 N.M. 38, 42, 499 P.2d 356, 360 (Ct.App.1972). The specific form or classification of negligence is not material under Section 41-4-12 of the Act. *See Ortiz,* 112 N.M. at 250-51, 814 P.2d at 118-19; *see also Weinstein,* 121 N.M. at 652, 916 P.2d at 1319. The only issue with regard to Section 41-4-12 is whether, as Plaintiff alleges, she

suffered personal or bodily injury resulting from an assault or battery "caused" by the negligence of law enforcement officers while acting within the scope of their duties. *See, e.g., Weinstein,* 121 N.M. at 653, 916 P.2d at 1320 (holding that immunity is waived under Section 41–4–12 for officers' negligent failure to forward paperwork and develop policies to prevent the wrongful release of a prisoner who subsequently raped the plaintiff); *Methola,* 95 N.M. at 333, 622 P.2d at 238 (holding that immunity is waived under Section 41–4–12 for officers' negligent failure to protect persons who were harassed, beaten, and physically and sexually assaulted by other inmates while in police custody); *Blea,* 117 N.M. at 220, 870 P.2d at 758 (holding that officers' negligent failure to detain an intoxicated motorist who later caused a fatal accident stated a claim under Section 41–4–12); *Ortiz,* 112 N.M. at 252, 814 P.2d at 120 (holding that officers' negligent supervision and training that proximately resulted in the false arrest, assault, battery, and malicious prosecution of the plaintiff stated a claim under Section 41–4–12). Having made the necessary allegations, Plaintiff is entitled to her opportunity to prove them at trial. The district court erred in granting summary judgment against her on this ground.

{35} The statutory definition of a law enforcement officer includes "any full-time salaried public employee of a governmental entity whose principal duties under law are to hold in custody any person accused of a criminal offense[.]" NMSA 1978, § 41–4–3(D) (1995). It is settled New Mexico law that directors of a county detention center, in which the inmates are primarily "accused of a criminal offense" and awaiting trial, fall within the definition of law enforcement officers under the Act. *See Abalos v. Bernalillo County Dist. Attorney's Office,* 105 N.M. 554, 560, 734 P.2d 794, 800 (Ct.App. 1987) (citing *Methola v. County of Eddy,* 96 N.M. 274, 629 P.2d 350 (Ct.App.1981) and distinguishing *Anchondo v. State Corrections Dep't,* 100 N.M. 108, 666 P.2d 1255 (1983)); *cf. Callaway v. New Mexico Dep't of Corrections,* 117 N.M. 637, 641, 875 P.2d 393, 397 (Ct.App.1994) (holding that corrections officers who hold convicted persons in custody are not law enforcement officers under Section 41–4–3(D) of the Act). It is undisputed that Steele was the director and Mochen was the captain and assistant director of the County Detention Center, and therefore, both are subject to suit as law enforcement officers under the Act.

{36} The Act also requires law enforcement officers to be acting within the scope of their duties as a condition to immunity waived under the Act. *See Weinstein,* 121 N.M. at 651, 916 P.2d at 1318. Steele wrote the recommendation for Herrera on Doña Ana County letterhead and signed the document as the Detention Center Administrator. It is alleged, although factually disputed, that Mochen verbally recommended Herrera while he was on the job and in the scope of his employment.

{37} To contradict the assertion that Steele and Mochen were acting within the scope of their duties, the County presented evidence of a county policy requiring all inquiries about former employees to be routed to the County Personnel Department; the policy also prohibited supervisors like Steele and Mochen from supplying employment referrals on their own. In rebuttal, Plaintiff asserts that, as a practical matter, the County never really prohibited, nor punished, the kinds of subjective opinions that Steele and Mochen made to MVH, and Plaintiff asserts that the County ratified the conduct of its agents even if it was unauthorized. We conclude that factual issues exist as to whether Steele and Mochen were "acting within the scope of their duties," which precluded the district court from resolving the matter on summary judgment. *See National Excess Ins. Co. v. Bingham,* 106 N.M. 325, 328, 742 P.2d 537, 540 (Ct.App.1987).

{38} As we have seen, the district court denied Plaintiff's motion for summary judgment, and in the same opinion, granted the County's summary judgment motion, thereby making both orders appealable by Plaintiff. *See Design Prof'ls Ins. Cos.,* 1997–NMCA–049, ¶ 24, 123 N.M. 398, 940 P.2d 1193. Accordingly, we reverse the grant of summary judgment for the County. We also reverse the denial of summary judgment for Plaintiff and order that partial summary judgment be granted in her favor to the effect that, (1) Steele and Mochen are law enforcement officers under Section 41–4–12 of the Act, and

(2) Plaintiff's allegations of negligent misrepresentation against Steele and Mochen state a claim for relief. However, we affirm the denial of summary judgment for Plaintiff on whether Steele and Mochen were acting within the scope of their duties under the Act and remand that issue for trial.

**CONCLUSION**

{39} We reverse the district court's grant of summary judgment for the County and reverse the district court's denial of Plaintiff's motion for partial summary judgment on the points indicated. We grant partial summary judgment for Plaintiff that, (1) Steele and Mochen are law enforcement officers under Section 41–4–12 of the Act, and (2) Plaintiff's allegations of negligent misrepresentation against Steele and Mochen state a viable claim for relief against the County. We remand for further proceedings consistent with this opinion.

{40} **IT IS SO ORDERED.**

HARTZ and ARMIJO, JJ., concur.