Mark R. PASSMORE, as Personal Representative of the Estate of Eva L. Passmore, and Mark R. Passmore, Individually, Appellants–Plaintiffs,

v.

LEE ALAN BRYANT HEALTH CARE FACILITIES, INC., Appellee–Defendant.

No. 61A01–0108–CV–286.

Court of Appeals of Indiana.

March 27, 2002.

James R. Fisher, Debra H. Miller, Ice Miller, Indianapolis, IN, for Appellants.

Janet A. McSharar, Alastair J. Warr, Harrison & Moberly, LLP, Indianapolis, IN, for Appellee.

## OPINION

MATHIAS, Judge.

Mark R. Passmore, as Personal Representative of the Estate of Eva L. Passmore, and individually ("Passmore"), appeals the trial court's grant of summary judgment in favor of Lee Alan Bryant Health Care Facilities, Inc. ("LAB"). Passmore presents five issues for review, which we restate as the following one dispositive issue: Whether the trial court erred when it found that Indiana does not recognize the torts of conscious and negligent misrepresentation involving the risk of physical harm.[1]

We affirm.[2]

### Facts and Procedural History

The facts most favorable to Passmore, as the non-movant, reveal that Passmore's mother, Eva Passmore ("Eva"), began residing at Parke County Nursing Home ("Parke County") in Rockville, Indiana, in late 1994 as an Alzheimer's patient. Br. of Appellant at 3; Appellee's App. p. 46. On November 27, 1997, Eva exhibited signs of pain by making vocal noises when the nurses moved her, especially her lower right extremity. Later that same day, a bruise on Eva's lower abdomen was discov-ered; it was about one and one-half inches above her pubic bone. Eva's primary care physician, Passmore, and Parke County's Social Service Director were notified. Nurses were given orders to have the seat-belt on Eva's wheelchair evaluated and repositioned by the Occupational Therapy department. Appellants' App. p. 80.

Three days later, on November 30, 1997, Eva's bruise had spread, and Eva was still exhibiting signs of pain and discomfort. Eva's primary care physician was again notified of the situation, and he ordered a pelvic x-ray for that same day at West Central Community Hospital ("West Central"). On December 1, 1997, the Parke County administrator was notified of the bruise and on December 2, 1997, Parke County called West Central to request a copy of the pelvic x-ray report. The Parke County Administrator and Passmore were notified of the results in the report, and on December 3, 1997, Parke County notified the Indiana Department of Health of the bruise. Appellants' App. pp. 80–81.

Charles Richardson ("Richardson") was the maintenance supervisor at Parke County when Eva's bruise was discovered. Parke County hired Richardson in May of 1994, while he was still working for his previous employer, LAB. Richardson worked at LAB from August 1991 until May 9, 1994. As part of Parke County's

---

1. Because one issue is dispositive in this case, we do not reach the other issues raised by Passmore: whether the trial court erred when it held that circumstantial evidence could not be used to establish a genuine issue of material fact with regard to the identity of the alleged rapist; whether the trial court erred when it sustained LAB's Motion to Strike certain deposition evidence based on the fact that LAB was not made a defendant in this action until after certain depositions had concluded and based on the fact that certain depositions contained hearsay; and, whether the trial court erred when it concluded that Passmore had ample opportunity to take ac-tion to protect his mother from her alleged injury because Passmore's daughter worked at the nursing home in which the alleged injury took place and had heard rumors of inappropriate conduct more than three years prior to Passmore's mother's alleged injury. Additionally, Passmore recognizes that his "claim does not come within the traditional elements of a fraud claim," see Br. of Appellant at 9.

2. Appellants' request for oral argument is denied.

hiring process, they mailed a "Request for Employment Reference" form to LAB regarding Richardson's employment history with LAB. Richardson had signed the form, authorizing LAB to release all information regarding his work record and performance.[3] Susan Hein, an administrator at LAB in April 1994, completed the form on behalf of LAB. She marked that Richardson had not received workman's compensation for any injuries while employed with LAB, that he was eligible for re-hire, that Richardson's attendance/punctuality was excellent, and that all other categories of his work record were good. Appellants' App. p. 85.

Passmore filed his original complaint in this cause on May 4, 1998, alleging that the injuries Eva suffered were the result of rape, and naming Parke County Nursing Home and Indiana Health Management Corporations as defendants. Passmore filed an Amended Complaint on May 28, 1998, a Second Amended Complaint on July 12, 1999, and a Third Amended Complaint on October 27, 1999. It was only in the Third Amended Complaint that LAB was added as a defendant.

On August 23, 1999 and on September 2, 1999 (after the Second Amended Complaint was filed, but prior to the filing of the Third Amended Complaint, which added LAB as a defendant), depositions were taken of Tammy Bruner, Crista Jenkins, Cynthia Jones, and Sarah Norman, all of whom were employees of Parke County. The depositions of Beth Bratcher, Rose Burnett, Vickie Durnil, Susan Hein, Joan Herrin, Cynthia Jones, Charles Richardson, Nancy Sowers, and Dana Starr were all taken after LAB was a named defendant.[4]

Passmore's Third Amended Complaint in this cause, filed October 27, 1999, alleged that an employee of Parke County, who LAB previously employed, had raped Eva. The Complaint alleged that LAB "affirmatively misled and misrepresented the employee as a good employee[,]" even though, the Complaint alleged, the employee had engaged in improper sexual activity with residents at LAB, and LAB's management and staff were aware of the conduct. Appellee's App. p. 11. The Complaint continued to allege that Parke County relied upon LAB's alleged misrepresentations in making its decision to hire the employee and that LAB made such misrepresentations "with knowledge of the substantial certainty that [the employee's] conduct would continue at Parke County Nursing Home, and with reckless disregard of the near certainty that such conduct would result in harm and injury to female residents of the Parke County Nursing Home facility." Appellants' App. pp. 11–12.

On August 3, 2000, LAB filed a Motion for Summary Judgment arguing that Passmore's "claim against Lee Alan Bryant rests on an unprecedented modification of Indiana law" because Passmore "asserted a claim for actual fraud against Lee Alan Bryant based on purported false represen-

---

3. The reference form was pre-printed and requested dates of employment, job responsibilities, reasons for leaving, whether the person had ever received workman's compensation for injuries, and whether the person was eligible for re-hire. The form also listed several descriptions of the person's work record that could be ranked as excellent, good, average, fair, or poor, by placing a check mark in the corresponding column. The listed descrip-

tions were quality, quantity, attendance/punctuality, dependability, character, cooperation with employees, cooperation with supervisor, and initiative/creativity. Appellants' App. p. 85.

4. Cynthia Jones was deposed twice in this case, once on September 2, 1999, and again on May 17, 2000.

tations made by Lee Alan Bryant in response to an employment reference inquiry made by [Parke County]." Appellants' App. p. 50. Passmore filed a response on September 20, 2000, and LAB replied on October 2, 2000. Appellee's App. pp. 84, 95. On the same day that LAB filed its reply brief, LAB filed motions to strike several depositions Passmore relied on and attached as affidavits to his response brief.

After a hearing on June 5, 2001 and after granting all of LAB's Motions to Strike, the trial court granted LAB's Motion for Summary Judgment on July 5, 2001. It is from that entry that Passmore now appeals. Additional facts will be provided as necessary.

### Standard of Review

■ Summary judgment is a procedural means to halt litigation when there are no factual disputes and to allow the case to be determined as a matter of law. *LeBrun v. Conner,* 702 N.E.2d 754, 756 (Ind.Ct.App. 1998). Under Indiana Trial Rule 56, the moving party bears the burden of showing that there are no genuine issues of material fact. If the moving party meets its burden, the burden shifts to the non-moving party to set forth facts showing the existence of a genuine issue for trial. Ind. Trial Rule 56(C), 56(E); *Oelling v. Rao,* 593 N.E.2d 189, 190 (Ind.1992). "A trial court's grant of summary judgment is 'clothed with a presumption of validity,' and the appellant bears the burden of demonstrating that the trial court erred." *Darst v. Ill. Farmers Ins. Co.,* 716 N.E.2d 579, 581 (Ind.Ct.App.1999), *trans. denied,* (citations omitted).

■ "To prevail on a summary judgment motion in a negligence case, the defendant must demonstrate that the undisputed material facts negate at least one element of the plaintiff's claim or that the claim is barred by an affirmative defense." *Ward v. First Ind. Plaza Joint Venture,*

725 N.E.2d 134, 135–36 (Ind.Ct.App.2000), *trans. denied.* This court applies the same standard as the trial court when reviewing a motion for summary judgment, and we resolve questions of fact or inferences drawn therefrom in favor of the nonmoving party. *Foster v. Evergreen Healthcare, Inc.,* 716 N.E.2d 19, 23–24 (Ind.Ct. App.1999), *trans. denied.*

### Discussion and Decision

■ Passmore argues that this court should adopt the principles of conscious misrepresentation and negligent misrepresentation as outlined in Restatement (Second) of Torts, Sections 310 and 311. LAB argues and Passmore admits however, that the current state of tort law in Indiana only recognizes the tort of negligent misrepresentation as outlined in Restatement (Second) of Torts, Section 552, and only under very limited circumstances.

Sections 310 and 311 allow third parties to recover from a person who has made a misrepresentation inducing action that involves a risk of physical harm. Restatement (Second) of Torts, Section 310, Conscious Misrepresentation Involving Risk of Physical Harm, provides that:

> An actor who makes a misrepresentation is subject to liability to another for physical harm which results from an act done by the other or a third person in reliance upon the truth of the representation, if the actor
>
> (a) intends his statement to induce or should realize that it is likely to induce action by the other, or a third person, which involves an unreasonable risk of physical harm to the other, and
>
> (b) knows
>
> (i) that the statement is false, or
>
> (ii) that he has not the knowledge which he professes.

Restatement (Second) of Torts, Section 311, Negligent Misrepresentation Involving Risk of Physical Harm, provides that:

(1) One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results

    (a) to the other, or

    (b) to such third persons as the actor should expect to be put in peril by the action taken.

(2) Such negligence may consist of failure to exercise reasonable care

    (a) in ascertaining the accuracy of the information, or

    (b) in the manner in which it is communicated.

Section 552, Restatement (Second) of Torts is similar to Section 311 because both sections impose liability for negligent misrepresentation. However, Section 552 differs from both Sections 310 and 311 because Section 552 requires a far more direct relationship between the parties involved and remedies pecuniary loss, rather than actual or potential physical harm. Section 552, Information Negligently Supplied for the Guidance of Others, provides that:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplied false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

    (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

    (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

As mentioned above, Indiana has not recognized the tort of conscious or negligent misrepresentation under Sections 310 or 311, and has only recognized Section 552 under limited circumstances, which are dissimilar to our case.

■ Regarding Section 552 liability, our supreme court has held that "[t]here is no question that professionals may be held liable in tort if they fail to exercise reasonable care in the fulfillment of their *contractual* duties." *Estate of Reasor v. Putnam County*, 635 N.E.2d 153, 161 (Ind. 1994) (citing *Flint & Walling Mfg. Co. v. Beckett*, 167 Ind. 491, 498, 79 N.E. 503, 505 (1906); *Essex v. Ryan*, 446 N.E.2d 368, 371 (Ind.Ct.App.1983) and cases cited therein) (emphasis added). Along with this, usually only those people in privity with the negligent professional or those people that the professional knew would be affected by his negligence, can recover. *Vickers v. Henry County Sav. & Loan Ass'n*, 827 F.2d 228, 233 (7th Cir.1987) (citing *Essex*, 446 N.E.2d at 373). In contrast, in the case before us, even though Passmore did not base his negligent misrepresentation claim on Section 552, LAB had no contractual duty to complete the tendered, pre-printed reference form, and

neither Passmore nor Eva were in privity with LAB.

Additionally, Indiana has recognized negligent misrepresentation under Section 552 only in the very narrow area of employment law when an employer breaches a duty to an actual or potential employee by making a false representation upon which the employee reasonably relies to his or her detriment. *Eby v. York–Div., Borg–Warner,* 455 N.E.2d 623, 629 (Ind. Ct.App.1983). Even the *Eby* court refused to extend employer liability to all foreseeable plaintiffs. *Id.* Moreover, our case is easily distinguishable from *Eby* because Passmore has not made an argument under Section 552 that an employee detrimentally relied on false representations of his employer.

We can find no Indiana cases that adopt Restatement (Second) of Torts, Sections 310 or 311, or a rationale under Indiana common law for doing so.

### Conclusion

Because Indiana does not currently recognize the torts of conscious and negligent misrepresentation and we decline to adopt such a rule of law today under the facts of this case, we conclude that the trial court properly granted summary judgment to LAB in regard to Passmore's claim of negligent misrepresentation.

Affirmed.

BROOK, C.J., concurs.

RILEY, J., dissents with separate opinion.

Judge, RILEY, dissenting.

I respectfully dissent. The central issue is best stated by the appellants in this case: does a nursing home owe third persons a duty not to make material misrepresentations in the course of making employment recommendations, when a substantial risk of physical harm to third persons by the employee is foreseeable.

Charles Richardson had previously been employed by LAB to maintain and secure their licensed nursing facility in Rockville, Indiana. Beth Bratcher, residential supervisor over the psychiatric building patients at LAB, testified at a deposition as follows:

Q. But while Charlie Richard was employed here, there were residents who were saying that Charlie Richardson was soliciting sex from residents?

A. Some residents had been saying that. I have heard them rumors.

\* \* \*

Q. When you heard those rumors, what did you do?

A. I would follow up with the residents and see what was going on. But nobody ever could come up with concrete—nobody could actually stand there and say that they have actually seen him have sex with anybody.

Q. Did you report that to the administrator?

A. I have.

Q. Was a written report generated of the investigation that was done to determine if those rumors were true?

A. I have no idea.

(Appellants' App. pp. 95–96). Bratcher herself never generated a written report concerning the allegations of sexual misconduct reported to her, and conducted no "formal" investigation into those reports. (Appellants' App. pp. 96c–96d).

The administrator at Parke County Nursing Home hired Mr. Richardson in May 1994 as a result of good references Mr. Richardson received from LAB. In fact, the employment reference form

shows Mr. Richardson to be a person of "good" character, and shows that he would be "eligible for rehire." (Appellants' App. p. 85).

Eva Passmore, an Alzheimer's patient, was allegedly raped on November 26, 1997, while a resident at the Parke County Nursing Home. Mark Passmore, Eva's son, contends that the rape was committed by Charles Richardson, who was then head of maintenance and security at this facility.

What duty, if any, does LAB have to Passmore? Had LAB done nothing to recommend Mr. Richardson to Parke County Nursing Home, perhaps, I would have been persuaded by the majority opinion. However, LAB took an affirmative and negligent step in recommending Mr. Richardson when he had a history of sexual misconduct in their facility.[5] The duty arises from this affirmative action.

In *Butler v. City of Peru*, 733 N.E.2d 912, 917 (Ind.2000), our supreme court held that a duty may also be imposed:

upon one who by affirmative conduct ... assumes to act, even gratuitously, for another to exercise care and skill in what he has undertaken. It is apparent that the actor must specifically undertake to perform the task he is charged with having performed negligently, for without actual assumption of the undertaking there can be no correlative legal duty to perform the undertaking carefully.

*Id.* (quoting *Northern Indiana Public Service Co. v. East Chicago Sanitary Dist.*, 590 N.E.2d 1067, 1074 (Ind.Ct.App.1992)).

In imposing a common law duty, a court should weigh three key factors: 1) the relationship between the parties, 2) the reasonable foreseeability of the type of harm to the type of plaintiff at issue, and 3) the public policy promoted by recognizing an enforceable duty. *Jacques v. Allied Bldg. Servs. of Ind., Inc.*, 717 N.E.2d 606, 608 (Ind.Ct.App.1999). The imposition of a duty is limited to instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm. *Id.*

LAB has assumed an affirmative duty by recommending Mr. Richardson to Parke County Nursing Home, as it was foreseeable that someone else may be the victim of his sexual misconduct. It certainly is clear that Indiana public policy is designed to protect vulnerable nursing home residents from sexual abuse. State regulations require strict screening of prospective employees of nursing homes to prevent this very situation.

There are no reported Indiana cases that address the circumstances under which a nursing home may be liable to third persons for the foreseeable physical harm resulting from providing false or misleading information as a referral to a prospective employer. Several other jurisdictions, however, have recently considered this issue and found that a duty existed in circumstances similar to this case. *Davis v. Bd. of County Comm'rs of Dona Ana County*, 127 N.M. 785, 987 P.2d 1172 (Ct.App.1999); *Grozdanich v. Leisure Hills Health Ctr., Inc.*, 25 F.Supp.2d 953 (D.Minn.1998), *reconsideration denied; Randi W. v. Muroc Joint Unified Sch. Dist.*, 14 Cal.4th 1066, 60 Cal.Rptr.2d 263, 929 P.2d 582 (1997).

The two most recent cases, from New Mexico and California, expressly adopt the

---

**5.** I recognize that Eva Passmore was allegedly raped. If Eva was indeed raped, it has not been established that Mr. Richardson was the perpetrator of such an act. Moreover, I recognize that Mr. Richardson's alleged sexual misconduct at LAB has not been proven as fact. However, these are issues to be raised at trial. The truth or falsity of such allegations should be before a jury or trier of fact.

principles set forth in the RESTATEMENT (SECOND) OF TORTS §§ 310 and 311. In *Davis*, 987 P.2d at 1175, a supervisor of a county detention center wrote a positive endorsement of Herrera to a psychiatric hospital that omitted any reference to a sexual harassment allegation where he had been investigated for allegedly sexually harassing female inmates. After getting the job with this hospital, Herrera sexually assaulted a patient nine months later. *Id. Davis* accepted the principles set forth in Section 311, as they apply to an employer's duty of care in making employment references and the circumstances under which that duty extends to foreseeable third parties. *Id.* at 1179.

The foreseeability of a particular kind of harm plays a very significant role in this determination of duty. Applying this factor, it is easy to see that Parke County Nursing Home would read and rely on LAB's recommendation in hiring Mr. Richardson. Moreover, LAB could foresee that had it not unqualifiedly recommended Mr. Richardson, it was likely that Parke County Nursing Home would not have employed him. And, finally, LAB could foresee that Mr. Richardson, having been hired by Parke County Nursing Home, might molest or rape a resident of the facility such as Eva Passmore, as he was accused of sexual misconduct at LAB prior to his employment with Park County Nursing Home.

In light of these factors and policy considerations, I find, consistent with the Indiana common law and the RESTATEMENT (SECOND) OF TORTS §§ 310 and 311, that the writer of a letter of recommendation owes to third persons a duty not to misrepresent the facts in describing the qualifications and character of a former employee, if making these misrepresentations would present a substantial, foreseeable risk of physical injury to the third person.