Danielle JOHNSON, Individually and as Parent and Next Friend of Alaya Dakota Johnson, a Minor, and Larry Wells as Administrator of the Estate of Larry Demond Johnson, Deceased, Appellants

v.

UNITED PARCEL SERVICE, INC., Appellee.

No. 2009–CA–000404–MR.

Court of Appeals of Kentucky.

Feb. 19, 2010.

Discretionary Review by Supreme Court Denied Dec. 10, 2010.

Case Ordered Published by Supreme Court Dec. 10, 2010.

Brian D. Cook and Alexander Wilson (argued), Louisville, KY, for appellant.

Tony C. Coleman and William F. Becker (argued), Louisville, KY, for appellee.

Before MOORE, NICKELL, and WINE, Judges.

## OPINION

WINE, Judge:

Larry Wells, Administrator of the Estate of Larry Demond Johnson, and Danielle Johnson, individually and as parent and next friend of Alaya Dakota Johnson (hereinafter "the Estate"), appeal from a dismissal under Kentucky Rules of Civil Procedure ("CR") 12.02 for failure to state a claim for which relief can be granted. On appeal, the Estate contends that United Parcel Service, Inc. owed a duty to warn future employers of its prior employee's violent work history when contacted by those future employers for reference checks. We disagree.

### History

Larry Demond Johnson was employed by Kroger Limited Partnership I at a Kroger Distribution Center. In June of 2005, Kroger hired Raymal Rivers. Rivers and Johnson worked together at the Distribution Center. On May 27, 2006, Rivers and Johnson, accompanied by several other employees, left the Distribution Center during their lunch break to eat at a nearby McDonalds. During the lunch, an argument broke out between Johnson and Riv-

ers. At some point, Rivers left the parking lot of the McDonalds to retrieve a firearm from his vehicle, after which point he returned, shot, and fatally wounded Johnson.

Before working for Kroger, Rivers had been employed by UPS from June 2000 until 2004. While employed by UPS, Rivers displayed aggressive behavior on numerous occasions. On February 27, 2004, Rivers threatened a co-worker, James Beasley, who then reported the incident to management. Rivers also engaged in other aggressive behavior, such as making threats to co-workers in the parking lot and waiting in the parking lot for employees to leave. He also reportedly followed female co-workers to their cars. The co-workers reported these incidents to members of management and security at UPS. On March 10, 2004, UPS held a disciplinary hearing regarding these allegations against Rivers. Rivers was reassigned to a new work area and ordered to attend anger management classes. He was later terminated from UPS.

Some time after being fired by UPS, Rivers applied for employment with Kroger. On his application for employment, he listed UPS as a previous employer. Kroger called UPS to obtain verification and for a reference check. The Estate alleges that UPS verified only the dates of employment and the title of the position Rivers held.[1]

Kroger thereafter hired Rivers to work at the Distribution Center where Johnson worked. After Johnson was killed, his Estate brought the present action in Jefferson Circuit Court, claiming, among other things, that UPS was negligent in its referral and failure to warn Kroger and that UPS was negligent in its performance of

---

1. The Estate states that they are unaware of whether a neutral or positive reference was given because they were not given the opportunity to conduct discovery.

the duty it undertook and in its misrepresentation of Rivers.[2] UPS filed a motion to dismiss under CR 12.02 for failure to state a claim for which relief can be granted. On February 4, 2009, the trial court granted UPS's motion to dismiss on the grounds that UPS owed Kroger no duty. The Estate now appeals.

### Analysis

In ruling on a motion to dismiss under CR 12.02, "a court should not dismiss for failure to state a claim unless the pleading party appears not to be entitled to relief under any state of facts which could be proved in support of his claim." *Weller v. McCauley*, 383 S.W.2d 356, 357 (Ky.1964). As the trial court considered matters outside the pleadings, we shall review the dismissal as if it were a summary judgment. *Waddle v. Galen of Kentucky, Inc.*, 131 S.W.3d 361, 364 (Ky.App. 2004). Since summary judgments involve no fact-finding, we review *de novo*. *Blevins v. Moran*, 12 S.W.3d 698 (Ky.App. 2000).

The trial court began its analysis by citing that any action for negligence requires duty, breach, (causation), and injury. The trial court further stated that no additional analysis is required if it is found that no legal duty exists. We agree that duty must first be established in a negligence action. *James v. Wilson*, 95 S.W.3d 875 (Ky.App.2002). Identifying a duty is a question of law for the court. *Id.* at 889.

It has been well-settled in Kentucky jurisprudence that there exists no duty to act in the protection of others or to alert others that a crime may be committed by another. *James v. Wilson, supra.*

However, the Estate points out that a trend has developed concerning employee reference checks, whereby employers refuse to give references for fear of defamation suits by former employees. The Estate argues that the "universal duty of care" that every person owes a duty to every other person to exercise reasonable care should apply here. The Estate further argues that a "special relationship" existed here, as contemplated by the *Restatement (Second) of Torts* § 315, which established a duty to warn foreseeable third parties. Finally, the Estate also argues that when an ex-employer undertakes to provide a reference check, that he undertakes a duty to render services under the *Restatement (Second) of Torts* § 323 and can be held liable when those services are negligently performed.

Essentially, the Estate argues that this Court should make new law through a precedent holding that all ex-employers have a duty to warn future employers of the potentially violent nature of its former employees where the former employee has exhibited a history of violence and the future employer calls for a reference check. However, this Court will not recognize such a duty where no such duty has existed before in the Commonwealth. While we are sympathetic with the position advanced by the Estate, it is more appropriately the role of the Kentucky Supreme Court or our Legislature to change existing law if either body deems such a change proper.

### I. Universal Duty of Care

To begin, Kentucky does not recognize a boundless and general "universal duty of care." This common misperception hails from *Grayson Fraternal Order*

---

**2.** Kroger and Rivers were also named in the complaint and the claims pertaining to them

remain active in the Jefferson Circuit Court.

of Eagles, Aerie No. 3738, Inc. v. Claywell, 736 S.W.2d 328 (Ky.1987) (superseded by statute ), where the Kentucky Supreme Court pronounced the oft-quoted rule that "every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury." Id. at 332. However, despite misinterpretations to the contrary, Kentucky has never recognized a general "universal duty of care," that would allow for new causes of action to arise that did not previously exist. See Morgan v. Scott, 291 S.W.3d 622 (Ky.2009) (stating that Grayson v. Claywell, supra "did not speak of creating new causes of action"). Indeed, our Supreme Court has recently noted that:

> [Grayson v. Claywell ] is often invoked "by parties advocating a theory of liability or a cause of action where none previously existed and legal authority is otherwise lacking. Despite its use of the catch phrase 'universal duty of care,' the Grayson case itself demonstrates that the duty referred to is not without limits."

Id. at 631, quoting James v. Wilson, supra.

As we stated in 2007, "despite its value as a 'catch phrase' . . . the 'universal duty of care,' has no meaning in Kentucky jurisprudence beyond the most general expression of negligence theory." Jenkins v. Best, 250 S.W.3d 680, 691 (Ky.App.2007).

## II.  Duty to Warn and "Special Relationship"

Further our courts have held that there is no duty to warn others that a crime may be committed by another. James v. Wilson, 95 S.W.3d at 889. See also, Fryman v. Harrison, 896 S.W.2d 908 (Ky.1995). Although other jurisdictions have established precedent which establishes a duty to warn in the employee reference context, Kentucky has never adopted such a rule.

See, e.g., Davis v. Board of County Commissioners of Doña Ana Co., 127 N.M. 785, 987 P.2d 1172, 1175 (1999); Gutzan v. Altair Airlines, Inc., 766 F.2d 135 (3d Cir.1985).

Further, we are not persuaded by the Estate that there is a special relationship between employer and ex-employee or future employers which would create a duty to warn as contemplated by the Restatement (Second) of Torts § 315. The Restatement (Second) of Torts § 315 states as follows:

> There is no duty to control the conduct of a third person as to prevent him from causing physical harm to another unless
>
> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
>
> (b) a special relation exists between the actor and the other which gives to the other a right to protection.

Id. The Kentucky Supreme Court has stated that in order to establish an affirmative legal duty to warn, there must be a special relationship with the victim. Fryman v. Harrison, 896 S.W.2d 908, 910 (Ky.1995). The Kentucky Supreme Court has also stated that the requirement of a "special relationship" applies to ordinary tort cases. Id. Cases in which our courts have recognized "special relationships" include psychiatrist and patient relationships where patients have expressed homicidal or violent intentions toward certain individual(s) to their psychiatrist or medical provider. See, Evans v. Morehead Clinic, 749 S.W.2d 696 (Ky.App.1988). See also, Devasier v. James, 278 S.W.3d 625 (Ky. 2009). We have also recognized the employer-employee relationship as a special relationship. Grand Aerie Fraternal Order of Eagles v. Carneyhan, 169 S.W.3d 840, 851 (Ky.2005).

■ While we have recognized the employer-employee relationship as one such "special relationship," our courts have not recognized this as a special relationship once the term of employment has ended. Further we have found no other jurisdictions which recognize the existence of a "special relationship" in the employment context once the employer-employee relationship has ended. As such, we decline to find such a relationship here.[3]

■ Moreover, we note that the Sixth Circuit has recently acknowledged that Kentucky law does not support the proposition that there is a "special relationship" between employer and employee which would impose upon the employer a "duty to warn" an employee of foreseeable risk of harm by a third party. *Mackey v. U.S.*, 247 Fed.Appx. 641 (6th Cir.2007).

### III. Negligent Performance of Undertaking to Render Services

■ Next, we are not persuaded by the Estate's argument that UPS undertook a duty by providing a reference check to Kroger. The Estate argues that this Court should rely upon the *Restatement (Second) of Torts* § 323 to find that UPS negligently performed the duty it allegedly undertook when provided the dates of employment and/or provided a reference to Kroger. However, we do not find that UPS undertook to render any "services" (as the term is contemplated by the *Restatement (Second) of Torts* ) to Kroger, and can find no support in this jurisdiction or others for such a proposition.

### IV. Negligent Misrepresentation

■ Finally, the Estate asks this Court to recognize negligent misrepresentation as a cause of action in the employee reference context. We acknowledge that several other jurisdictions have recognized a cause under Sections 310 and 311 of the *Restatement (Second) of Torts* for negligent and/or intentional misrepresentation. *See e.g., Passmore v. Multi–Management Services, Inc., supra,* and *Davis v. Board of County Com'rs of Doña Ana County, supra.* However, there is no support for this cause of action in the employee reference context in existing Kentucky case law. As aforestated, we decline to expand our existing law on negligent misrepresentation to encompass references given by former employers where there has been not previously been a cause of action in this context.

### Conclusion

In sum, we are aware of no Kentucky law which would impose a duty to warn upon an ex-employer under the theories espoused by the Estate on appeal. Unless or until a duty is recognized in this context by the Kentucky Supreme Court or by our Legislature, no cause will lie for such claims in the Commonwealth.

Thus, we hereby affirm the Jefferson Circuit Court.

ALL CONCUR.

---

**3.** Indeed, we have only found cases which establish a "special relationship" between employer and employee while the employee is *still employed* by the employer. Cases in other jurisdictions finding liability once the employer-employee relationship has terminated rely not upon a "special relationship" theory, but instead upon the *Restatement (Second) of*

Torts § 310 or § 311, which provide that an employer may not intentionally or negligently provide *false* information about an ex-employee. *See, e.g., Passmore v. Multi–Management Services, Inc.,* 810 N.E.2d 1022 (Ind.2004); *Davis v. Board of County Com'rs of Doña Ana County, supra.*