Rachel L. BERGHAUS, Appellant,

v.

U.S. BANK, Appellee.

No. 2010–CA–002050–MR.

Court of Appeals of Kentucky.

Feb. 10, 2012.

Clement L. Bezold, Jr., Wilder, KY, for appellant.

Christopher M. Hill, Frankfort, KY, for appellee.

Before COMBS and NICKELL, Judges; LAMBERT,[1] Senior Judge.

## OPINION

COMBS, Judge:

The Campbell Circuit Court dismissed the counterclaim of Rachel L. Berghaus in litigation initiated by U.S. Bank. The court also entered a judgment and order of sale in favor of U.S. Bank, trustee for the registered holders of Home Equity Asset Trust 2004–2, Home Equity Pass–Through Certificates, Series 2004–2. Berghaus now appeals. After our review, we affirm in part, vacate in part and remand.

On December 19, 2003, Berghaus, a subprime borrower, signed a note for a residential mortgage loan. Decision One Mortgage Co., LLC (a subprime mortgage lender and, at that time, subsidiary of HSBC Finance Corporation) was the loan originator. The loan was one commonly identified as a 2/28 hybrid ARM (adjustable rate mortgage) since it contained both

---

1. Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

fixed and adjustable rate features. Berghaus borrowed $68,000.00.

According to the terms of the note, her first twenty-four monthly mortgage payments were based on a fixed rate of 7.49%. The amount of the remaining mortgage payments was to be adjusted every six months. The adjustments were subject to defined caps and a floor and were tied to a widely used variable index (the London Interbank Offered Rate—"LIBOR"), plus a "margin" of 7.24% (set by the lender). Pursuant to the note, the first rate change could not result in an interest rate exceeding 10.49%. And, regardless of the LIBOR index, Berghaus's interest rate would never change by more than one percentage point from the rate that she had been paying for the preceding six months. In no event was her interest rate ever to exceed 13.49%. Finally, the interest rate would never fall below the initial rate charged by the lender.

In addition to the note and various other closing documents, Berghaus signed a federal Truth–in–Lending disclosure statement. To secure repayment of the loan, Berghaus mortgaged her home at 51 16th Street in Newport, Kentucky.

Berghaus was advised in writing that the lender might transfer the note and mortgage. On March 1, 2004, Berghaus's note and mortgage were assigned to U.S. Bank in its capacity as trustee for the registered holders of Home Equity Asset Trust 2004–2, Home Equity Pass–Through Certificates, Series 2004–2.

In accordance with federal regulations, Berghaus was advised in writing and in advance of each of the periodic rate increases. By July 2007, Berghaus's interest rate had risen to 12.625%, and she could no longer afford the mortgage payments on her home.

On February 25, 2009, U.S. Bank, in its capacity as trustee, filed a foreclosure action against Berghaus. The bank alleged that Berghaus had defaulted on her obligations under the terms of the note and mortgage.

Berghaus answered the bank's complaint and denied the default. She essentially asserted a claim for recoupment as an affirmative defense. Additionally, Berghaus asserted a counterclaim alleging: (1) that Decision One Mortgage (the loan originator) had violated numerous provisions of the federal Truth–in–Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.;* and (2) that Decision One Mortgage had "engaged in predatory lending practices and a bait and switch fraud" scheme to induce her to sign the loan documents. Answer, Counterclaim and Jury Demand at 2. Based upon her assertions, Berghaus demanded statutory and punitive damages, costs, and attorney fees. She also sought release of the lien and dismissal of the foreclosure action.[2]

U.S. Bank filed a timely motion to dismiss for failure to state a claim upon which relief could be granted. On April 27, 2009, the bank filed a memorandum in support of its motion to dismiss Berghaus's counterclaims. It contended that Berghaus's TILA claims were time-barred. In the alternative, it argued that Berghaus was not entitled to relief since the bank as *an assignee*—and not the original lender subject to TILA's disclosure requirements— "enjoyed safe-harbor" under TILA's provisions. U.S. Bank contended that the fraud claims also must fail since Berghaus admitted that she had fully understood and consented to the loan documents at the time that she was asked to sign them.

On December 15, 2009, after hearing extensive oral arguments and after having

---

**2.** Berghaus eventually disclaimed any right to rescission.

reviewed the mortgage, note, adjustable rate rider, floor rate rider, and disclosure statement, the trial court granted the bank's motion to dismiss Berghaus's counterclaim. The court granted the motion to dismiss on the basis that U.S. Bank (again as assignee rather than the loan originator) was entitled to the protection of TILA's safe-harbor provisions. Subsequently, the trial court: denied Berghaus's motion to alter, amend, or vacate the order dismissing; denied Berghaus's motion to amend her counterclaim to add a claim for fraud in the inducement; and granted the bank's motion for summary judgment and an order of sale. This appeal followed.

The issue of safe harbor is a troubling one—both as to equity and the public policy of protecting borrowers that was supposed to be the *raison d'être* of truth in lending. We have discussed in detail whether an assignee of a loan has a duty—either direct or implied—to investigate loan application documents underlying the loans transferred to it, to discover any defects or omissions for which the assignor might have been responsible.

And we have been confronted with yet another confirmation of the harsh consequences of the economic times in which we live. There is no duty to investigate. An assignor under these circumstances enjoys safe harbor just as a *bona fide* purchase for value (BFP) protected in other commercial transactions. However, while a BFP cannot claim that protection unless he is equitably entitled to do so, such is not the result in cases like the one before us now. U.S. Bank as an assignee is wholly entitled to claim safe harbor under the pertinent provisions. Berghaus has suffered a wrong for which the current state of the law lamentably provides neither remedy nor safeguard.

Berghaus contends that the trial court erred by granting summary judgment in favor of the bank with respect to her counterclaims; by failing to grant her motion to amend her counterclaim; and by granting summary judgment and an order of sale with respect to the bank's claim of default.

 In response to the bank's motion, the trial court dismissed Berghaus's counterclaims on December 15, 2009. A motion to dismiss should be granted only where "it appears the pleading party would not be entitled to relief under any set of facts which could be proved in support of his claim." *Pari–Mutuel Clerks' Union v. Kentucky Jockey Club*, 551 S.W.2d 801 (Ky.1977). However, because the trial court considered matters outside the pleadings in this matter, we must review the dismissal of Berghaus's counterclaims as if it were a summary judgment. *Johnson v. United Parcel Service, Inc.*, 326 S.W.3d 812 (Ky.App.2010). If it is shown that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Kentucky Rules of Civil Procedure (CR) 56.03. On appeal, we must decide whether the trial court correctly determined that the moving party was entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779 (Ky.App.1996). Since factual findings are not at issue, an appellate court does not defer to the trial court and conducts its review *de novo*. *Blevins v. Moran*, 12 S.W.3d 698, 700 (Ky.App.2000).

 Berghaus argues that the trial court erred by granting summary judgment in favor of the bank with respect to her counterclaims. She argues first that the court failed to fully consider her allegations that Decision One Mortgage had violated provisions of TILA by failing to disclose prior to closing the potential for an enormous increase in the interest rate on her loan and the existence of a rate

floor. She contends that these omissions should have been apparent to U.S. Bank as the successor to Decision One Mortgage.

Congress enacted the Truth in Lending Act in 1968 in order to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit...." 15 U.S.C. § 1601(a). The Act and its implementing regulation-drafted by the Federal Reserve Board of Governors and commonly known as "Regulation Z" (12 C.F.R. § 226.1 *et seq.*) [3]—require *creditors* to disclose "clearly and conspicuously" (in writing and in a form that the borrower may keep) specific information pertaining to credit transactions. *See* 15 U.S.C. §§ 1632(a), 1635(a); 12 C.F.R. §§ 226.17, 226.18. If a creditor fails to make the required disclosures, the Act provides for a private right of action for statutory damages. 15 U.S.C. § 1640(a)(1). In addition to damages, the borrower may also be entitled to collect costs and attorney's fees. 15 U.S.C. § 1640(a)(3). Under certain limited circumstances, the borrower may even rescind the loan agreement or assert a right of set-off. *See Beach v. Ocwen Federal Bank*, 523 U.S. 410, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998).

■ Berghaus was required by the Act's provisions to file her claims "within one year from the date of the occurrence of the violation...." 15 U.S.C. § 1640(e); *Coombs v. Beneficial Finance Co.*, 549 S.W.2d 327 (Ky.App.1977). Where an alleged TILA violation is based upon insufficient disclosure, the limitation period generally begins as of the date of consummation of the transaction. Berghaus's

loan agreement was consummated on December 19, 2003. She filed her counterclaim against U.S. Bank on April 1, 2009. Berghaus has not identified any facts that would serve to extend the ordinary limitations period in this case. Consequently, her claim for money damages, costs, and attorney fees is time-barred. U.S. Bank was clearly entitled to summary judgment with respect to this claim.

■ Her second contention is that the trial court erred in its determining that U.S. Bank could not be found liable for the common-law fraud allegedly perpetrated by Decision One prior to closing and by concluding that the bank was entitled to summary judgment with respect to this claim as well.

In her brief, Berghaus explains that although she originally applied for a 7.5% fixed-rate loan, Decision One fraudulently offered her the 2/28 hybrid ARM loan at closing. The trial court concluded that Berghaus's fraud claim was directly undermined by her own representations since she indicated that she understood before closing that her loan had a variable-rate provision and that it was not the traditional fixed-rate loan for which she had hoped to qualify.

However, Berghaus has not explained how U.S. Bank could be found liable for fraud. She has not alleged that U.S. Bank was involved in her loan transaction in any way. U.S. Bank acts as trustee for Home Equity Asset Trust 2004–2, which is the mortgage-backed securities trust pool that includes Berghaus's loan. Decision One originated Berghaus's loan in December 2003; the trust acquired the mortgage in March 2004. There is no indication what-

---

3. On July 21, 2011, TILA's general rulemaking authority was transferred to the Consumer Financial Protection Bureau pursuant to the Dodd–Frank Wall Street Reform and Consumer Protection Act. *See generally* Dodd–Frank Wall Street Reform and Protection Act, Pub.L. No. 11–203, 124 Stat. 1376 (2010).

soever that U.S. Bank was directly involved with her transaction. Additionally, there is no suggestion that U.S. Bank acquired the note in any manner inconsistent with the exercise of good faith and due diligence. Thus, the trial court did not err by concluding that there was no genuine issue as to any material fact and that U.S. Bank was entitled to judgment as a matter of law as to this claim. Nor did the court err in denying Berghaus leave to amend her counterclaim to assert a claim of fraud in the inducement.

Finally, Berghaus contends that the trial court erred by granting the bank's motion for summary judgment (based upon her default) and an order of sale.

■ While TILA claims asserted against a lender or assignee must be brought within one year of the violation, a consumer may raise violations of the Act as a defense to a debt-collection action even after the expiration of the period. 15 U.S.C. § 1640(e); *Empire Finance Co. of Louisville v. Ewing,* 558 S.W.2d 619 (Ky. App.1977). If a borrower asserts claims defensively, the TILA one-year statute of limitations does not apply. On appeal, we must determine whether the trial court erred by deciding that Berghaus's defense against U.S. Bank's action against her was unavailing.

Most important in our analysis of this issue is the fact that TILA'S specific disclosure requirements apply *only to the initial lender* and not to a party to whom the creditor's rights are later assigned. The Act specifically provides that the "creditor," who has the duty to disclose, is limited to the person or entity "to whom the debt arising from the consumer credit transaction is initially payable on the face

of the evidence of indebtedness...." 15 U.S.C. § 1602(g).

■ Under the provisions of the Act, a lender's assignee is ordinarily entitled to safe harbor and may be subject to liability only under a very narrow set of circumstances. The assignee can be held liable only for violations of the Act that are "apparent on the face of the disclosure statement...." 15 U.S.C. §§ 1641(a)(e)(1)(A). A violation is apparent on the face of the disclosure statement only where "the disclosure can be determined to be incomplete or inaccurate by a comparison among the disclosure statement, any itemization of the amount financed, the note, or any other disclosure of disbursement" or if "the disclosure statement does not use the terms or format required to be used...." 15 U.S.C. § 1641(e)(2)(A)–(B).

■ Berghaus does not contend that Decision One's disclosure statement failed to use the required terms or format. However, she does contend that Decision One violated TILA's disclosure requirements and that these violations were apparent on the face of the disclosure statement that was provided for inspection to its assignee, U.S. Bank. She contends that neither the potential for an enormous rate increase nor the existence of a rate floor was properly disclosed before the transaction was consummated. We disagree with this assertion.

Before Congress enacted the Mortgage Disclosure Improvement Act of 2008 (the MDIA),[4] TILA, as implemented by Regulation Z, required creditors to disclose specific information relevant to a closed-end

---

4. The MDIA is contained in Sections 2501 through 2503 of the Housing and Economic Recovery Act of 2008, Public Law 110–289, enacted on July 30, 2008. The MDIA was later amended by the Emergency Economic Stabilization Act of 2008, Public Law 110–343, enacted on October 3, 2008.

credit transaction. Creditors were routinely required to disclose with particularity: the identity of the creditor; the annual percentage rate (commonly referred to as "APR," a term of art that adds into the interest costs of a home loan various other charges, including the costs of private mortgage insurance and bank processing fees); the amount financed; the finance charge; the sum total of all payments; the number, amount, and due dates or period of payments scheduled to repay the total of payments; the nature of any late charges; notice that a security interest will be retained in the property purchased as part of the transaction; notice that credit life, accident, health or loss of income insurance is not required in connection with the loan; and the creditor's policy on loan assumption. 12 C.F.R. § 226.18.

Special disclosures were triggered with respect to a loan on a borrower's primary residence. If the APR might increase in a transaction that was secured by the borrower's *principal dwelling* (with a term of more than one year), additional disclosures were required—namely, (1) the fact that the transaction contained a variable-rate feature and (2) a statement that specific variable-rate disclosures had been provided to the borrower at an earlier date. 12 C.F.R. § 226.19(b). Additionally, the APR had to reflect a composite annual percentage rate that was based on the *initial* rate for as long as it was charged. For the

remainder of the term, the APR had to reflect the rate that would have been applied using the index or formula in effect at the time of consummation. Some time in advance of the closing date,[5] disclosures had to be made explaining exactly how the interest rate and payment would be adjusted in connection with variable-rate transactions secured by the borrower's principal dwelling. *See* 12 C.F.R. §§ 226.19(b), 226.20(c). Finally, where the loan was secured by the borrower's residence, the creditor had to give the borrower good-faith estimates of the disclosures no later than 3 days after the lender's receipt of the credit application. 15 U.S.C. §§ 1638(b)(1), (b)(2)(A).

The disclosure statement that Berghaus signed at closing was based upon a model form approved by the Federal Reserve Board. It indicated that Berghaus's lender was Decision One Mortgage and that her loan's APR was 8.6409%. It provided the total finance charge—the dollar amount that she could be expected to pay for the credit—and the total amount financed. It also provided the sum of these figures—the sum total of all her projected payments. The statement advised that the loan had a variable-rate feature and included a schedule of payments based on the initial interest rate (24 payments) and a subsequent interest rate increase (336 payments) based upon the LIBOR index as of the date of closing.[6] As scheduled, the

---

**5.** Specifically, "at the time an application form is provided or before the consumer pays a non-refundable fee, whichever is earlier...." 12 C.F.R. § 226.19(b).

**6.** The schedule indicated that the initial 24 mortgage payments would be $475.01 per month; it indicated that the remaining 335 payments would be $515.27 per month, plus one last monthly payment of $509.40. The MDIA, as implemented by Regulation Z, now requires creditors to disclose examples of rates and payments, including the maximum

rate and payment, for loans with variable rates in detailed interest rate and payment summary tables. *See* 12 C.F.R. § 226.18. Supplementary information published in the Federal Register regarding the implementation of the MDIA through an interim rule indicates that the original TILA payment schedule, which did not clearly show the relationship between the interest rate and payments, was ineffective in communicating to consumers what could happen to their payments over time with an adjustable-rate mort-

payments fully amortized the amount owed and complied with required payment disclosures. The disclosure also properly reflected Berghaus's acknowledgement that she had been provided the required variable-rate disclosures at an earlier date.[7] The disclosure clearly advised Berghaus that a security interest in her home would be retained by the lender and that a subsequent purchaser of the property could not assume the remainder of the mortgage on its original terms. It provided relevant information with respect to the types of insurance that were and were not required by the loan, and it described the nature of the late charges that could be assessed on overdue payments. Finally, the disclosure indicated that the loan agreement included a prepayment penalty. Neither party disputes the contents or authenticity of the disclosure statement.

The existence of the loan's interest-rate floor and variable-rate feature were fully disclosed to Berghaus prior to consummation, and the disclosure statement appears on its face to comply with the TILA requirements as they existed before enactment of the MDIA. However, Berghaus suggests in her brief that the information provided to her in the disclosure statement did not conform to information that was originally given to her by way of a good-faith estimate provided by Decision One. That alleged discrepancy would not have been apparent on the face of the disclosure statement. In order to become aware of

the alleged discrepancy, U.S. Bank would have had to undertake an investigation of facts beyond what Congress required of assignees. Accordingly, U.S. Bank could bear no liability for this alleged violation, and Berghaus cannot assert it as a viable defense. The trial court did not err in so concluding.

■ However, Berghaus also contends that the trial court erred by refusing to allow sufficient discovery before the judgment was entered and by relying solely upon an allegedly deficient affidavit offered by the bank. We agree with these assertions.

Berghaus alleges that as proof of the amount owed, U.S. Bank filed a "robo-signed" affidavit.[8] Brief at 7. She contends that this "signer had no apparent authority to bind the lender" and that there was no proof that the affiant knew whether the amount claimed as the "payoff balance" was accurate. *Id.* Berghaus explained that she was entitled to an opportunity to explore the bank's "proof" carefully since banks "routinely add double and triple charges, spurious and irrelevant charges." *Id.*

In support of its motion for summary judgment and order of sale filed on August 31, 2010, U.S. Bank attached the affidavit of Johanna Miller. Miller identified herself as an authorized agent of Ocwen Loan Servicing, LLC, loan servicer for U.S. Bank in its capacity as trustee for the

---

gage. "When shown a payment schedule for an adjustable-rate mortgage with an introductory rate ... many [borrowers] incorrectly assumed that payments shown were in fact their future payments, rather than payments based on the fully-indexed rate at consummation." Regulation B; Truth in Lending, 75 Fed.Reg. 58470, 58474 (interim rule effective Oct. 25, 2010).

**7.** These disclosures include a copy of the booklet entitled *Consumer Handbook on Ad-*

*justable Rate Mortgages,* published by the Board and the Federal Home Loan Bank Board. 12 C.F.R. § 226.19.

**8.** A "robo-signer" is an agent or employee of the note-holder who quickly processes numerous foreclosures at once without a careful evaluation of the merits of the proceeding or verification of the accuracy of the data provided.

registered holders of Home Equity Asset Trust 2004–2, Home Equity Pass–Through Certificates, Series 2004–2. Miller indicated that her responsibilities include the management of accounts and that she has access to records containing relevant data for every loan serviced. She provided a summary of information with respect to Berghaus's loan, including: principal balance, accrued interest, late charges, escrow advances, and "Selected Fees & Expenses." She indicated that Berghaus's payoff balance as of April 5, 2010, was $90,511.55.

CR 56.03 provides that affidavits may be used to determine if summary judgment is proper. However, CR 56.05 provides that sworn or certified copies of all papers or parts thereof referred to in an affidavit *"shall* be attached thereto or served therewith." (Emphasis added.) While it can be inferred from the averments included in Miller's affidavit that she had undertaken a review of Berghaus's account, the fact remains that copies of the records to which she referred in the affidavit were neither attached to nor served with the affidavit— rendering the affidavit deficient. The bank's deficient affidavit, coupled with the trial court's denial of an opportunity for full and complete discovery in this case, persuades us that summary judgment with respect to Berghaus's breach and the order of sale were prematurely entered.

To summarize, we affirm the trial court's summary judgment in favor of U.S. Bank with respect to Berghaus's counterclaims. We vacate the summary judgment and order of sale entered with respect to Berghaus's breach and remand for additional proceedings.

ALL CONCUR.