RENDERED:  AUGUST 5, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

**OPINION OF JUNE 17, 2022, WITHDRAWN**

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1115-MR

CUSTOM FOOD PRODUCTS, LLC
AND THERESA BALENTINE                                        APPELLANTS


APPEAL FROM BATH CIRCUIT COURT
v.           HONORABLE ROBERT W. MCGINNIS, JUDGE
ACTION NO. 16-CI-90163


STELLA SHROUT                                                        APPELLEE

AND


NO. 2020-CA-1180-MR

STELLA SHROUT                                        CROSS-APPELLANT


CROSS-APPEAL FROM BATH CIRCUIT COURT
v.           HONORABLE ROBERT W. MCGINNIS, JUDGE
ACTION NO. 16-CI-90163


CUSTOM FOOD PRODUCTS, LLC
AND THERESA BALENTINE                                CROSS-APPELLEES

OPINION
AFFIRMING IN PART
AND REVERSING IN PART

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; GOODWINE AND McNEILL, JUDGES.

McNEILL, JUDGE: Custom Food Products, LLC ("Custom Food") and Theresa Balentine ("Balentine") appeal from a Bath Circuit Court judgment awarding Stella Shrout ("Shrout") $1,087,440 in damages following a jury trial. Shrout cross-appeals from the same judgment. For the reasons set forth below, we reverse the judgment as to the appeal and affirm the judgment as to the cross-appeal, with directions that a new judgment be entered in conformity this Opinion.

Custom Food manufactures processed beef, chicken, and pork for consumption across the United States. Shrout worked as an at-will employee at Custom Food's Owingsville, Kentucky facility until she was terminated on October 6, 2016. On that date, a forklift hit Shrout as she was showing a new employee around the production floor.[1] Pursuant to company policy, Shrout was taken to a nearby medical clinic to be drug tested.

---

[1] Shrout was not physically injured as a result of this incident.

Shrout tested positive for oxycodone, opiates, and methamphetamine.[2] Based upon these results, Balentine, Custom Food's Human Resources Director at the time, terminated Shrout's employment. Shrout disputed the positive test result and requested the opportunity to be retested. Shrout was emotional and crying and tried to convince Balentine to change her mind. According to Shrout, Balentine authorized her to be tested again by a different medical facility and told her if the result was different she would reconsider.

Shrout went to St. Claire Medical Center to be retested. While awaiting the results, Shrout called Balentine multiple times denying the positive drug test and asking for her job back. The second test was negative for oxycodone and methamphetamine; however, the document provided by the medical review service that confirmed the test simply states, "Negative Opiates." Shrout informed Balentine of the negative result but Balentine refused to reconsider Shrout's termination.

On December 2, 2016, Shrout filed a complaint in the Bath Circuit Court against Custom Food and Balentine alleging defamation, workers' compensation retaliation, wrongful use of administrative proceeding, negligence,

---

[2] Shrout apparently had a prescription for hydrocodone (an opiate) and had provided a list of her medications to Custom Food when she was hired. It is unclear if Balentine was aware of this information at the time Shrout was terminated.

intentional infliction of emotional distress (IIED), and negligent infliction of emotional distress (NIED). A jury trial was held on February 26, 2020.

At trial, Shrout presented evidence that her termination caused her great emotional distress. She testified that employees from Custom Food would approach her in public about the positive drug test and that she carried her negative drug test in her pocket to prove she was clean. She further testified the negative drug test prevented her from getting another job because she had to notify prospective employers that she had been fired for a "dirty" drug test. She stated she had many "dark days" where she would just sit in her apartment for days at a time and do nothing.

Shrout's expert psychologist testified that she suffered from a form of post-traumatic stress disorder because of her termination. He testified that Shrout took great pride in her work and that losing her job was traumatic. It impacted her self-esteem and caused financial stress. He further opined that Shrout would need continued therapy and medication and would unlikely be able to work for the remainder of her life.

At the close of Shrout's case, appellants moved for directed verdict on all claims. The trial court granted the motion as to defamation and wrongful use of administrative proceeding. Following the evidence, the trial court denied appellants' renewed motion for directed verdict on the remaining claims.

-4-

The jury returned a verdict in favor of appellants on the workers' compensation retaliation and IIED claims and in favor of Shrout on the negligence and NIED claims. Shrout was awarded $750,000 for pain and suffering, $37,440 for medical expenses, and $300,000 for loss of income and loss of ability to earn income in the future for a total award of $1,087,440 in damages. This appeal and cross-appeal followed. Further facts will be set forth as necessary below.

Appellants maintain they were entitled to a directed verdict as a matter of law on Shrout's negligence and NIED claims because Shrout was an at-will employee and was owed no duty of care regarding her termination. As an initial matter, Shrout contends appellants have waived this argument by failing to tender jury instructions on negligence and NIED.[3] However, appellants' challenge is to the giving of the instruction itself, not the language of the instruction. Appellants moved for directed verdict at the close of Shrout's case and again at the close of all evidence thus preserving the issue for appeal. *Ray v. Commonwealth*, 611 S.W.3d 250, 266 (Ky. 2020), *cert. denied sub nom. Ray v. Kentucky*, No. 20-8236, 2021 WL 4508153 (U.S. Oct. 4, 2021).

Turning first to the negligence claim, to prove negligence, a plaintiff must show "(1) a duty on the part of the defendant; (2) a breach of that duty; and

---

[3] Appellants did in fact tender jury instructions on negligence and NIED at trial following the court's denial of their motion for directed verdict, while maintaining they owed no duty of care to Shrout as a matter of law.

-5-

(3) consequent injury." *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992) (citation omitted). "If no duty is owed by the defendant to the plaintiff, there can be no breach thereof, and therefore no actionable negligence." *Ashcraft v. Peoples Liberty Bank & Trust Co., Inc.*, 724 S.W.2d 228, 229 (Ky. App. 1986). Whether a duty exists is a question of law and is reviewed *de novo*. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 89 (Ky. 2003). "When a court resolves a question of duty it is essentially making a policy determination." *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 248 (Ky. 1992).

The trial court's ruling concerning duty is somewhat unclear from the record, both as to the exact nature of the duty owed and the basis for finding a duty. The Court's negligence instruction to the jury provided: "You will find for Stella Shrout on her Negligence claim if you are satisfied from the evidence that Defendants failed to use ordinary care regarding Ms. Shrout's drug testing process and that this failure was a substantial factor in the harm suffered by Ms. Shrout."

Throughout trial, Shrout argued that appellants were negligent for terminating Shrout's employment based upon a faulty initial drug test instead of using a more accurate confirmatory test. Shrout has not cited, and the Court has not found, any Kentucky law imposing a duty on employers to drug test reasonably in connection with terminating an employee. "[T]his Court will not recognize . . .

a duty where no such duty has existed before in the Commonwealth." *Johnson v. United Parcel Serv., Inc.*, 326 S.W.3d 812, 815 (Ky. App. 2010).

Other jurisdictions have explicitly declined to find a duty under the same or similar circumstances. *E.g.*, *Mission Petroleum Carriers, Inc. v. Solomon*, 106 S.W.3d 705, 716 (Tex. 2003) ("Just as we have consistently preserved the doctrine of employment-at-will from encroachment by other liability theories, we decline Solomon's invitation to adopt a new theory of liability for negligent drug testing."); *Bellinger v. Weight Watcher Gourmet Food Co.*, 756 N.E.2d 1251, 1257 (Ohio Ct. App. 2001) ("Weight Watchers owed no duty to appellant as to drug testing as appellant was an employee-at-will. Weight Watchers could have discharged appellant without even conducting drug tests."); *Baca v. Fisher Sand & Gravel, Co.*, No. CV-09-0221-DJS-RHS, 2010 WL 11493830, at *7 (D.N.M. 2010) (interpreting New Mexico law) ("In this case, Plaintiffs Baca and Ulibarri do not dispute they were at-will employees. Consequently, Fisher owed no duty to Plaintiffs Baca and Ulibarri to conduct drug testing in any particular manner, and it was entitled to discharge them whether they failed or passed the drug test or give no reason at all for their termination.").

Shrout makes several arguments in support of the trial court's ruling, none of which are persuasive. First, she focuses on appellants' alleged negligent conduct, without identifying any duty, which is the subject of the directed verdict

motion and this appeal.  As to duty, she cites a "universal duty of care" but "Kentucky has never recognized a general 'universal duty of care,' that would allow for new causes of action to arise that did not previously exist." *Johnson*, 326 S.W.3d at 816.

She also argues that appellants assumed a duty to drug test her reasonably based upon Custom Food's drug testing policy.  Shrout cites *Estep v. B.F. Saul Real Estate Investment Trust*, 843 S.W.2d 911 (Ky. App. 1992), for the "well-known rule that a duty voluntarily assumed cannot be carelessly undertaken without incurring liability therefore." *Id.* at 914.  However, Kentucky has adopted the *Restatement (Second) of Torts* § 324A (1965) "regarding the elements necessary for liability for the breach of a voluntarily assumed duty." *Morgan v. Scott*, 291 S.W.3d 622, 632 (Ky. 2009).  Under the facts of this case, "[w]e do not find that [appellants] undertook to render any 'services' (as the term is contemplated by the *Restatement (Second) of Torts* ) to [Shrout], and can find no support in this jurisdiction or others for such a proposition." *Johnson*, 326 S.W.3d at 817.  Without a duty, appellants cannot be liable for negligence.  Therefore, they were entitled to directed verdict as a matter of law.

Appellants were also entitled to a directed verdict on Shrout's claim for NIED.  A party seeking to recover damages for emotional distress "must present evidence of the recognized elements of a common law negligence claim[.]"

*Osborne v. Keeney*, 399 S.W.3d 1, 17 (Ky. 2012).  Because Shrout's negligence claim fails as a matter of law, her NIED claim likewise fails.  Therefore, the trial court erred in failing to direct a verdict in favor of appellants on Shrout's NIED claim.

Because we conclude the trial court should have entered a directed verdict in favor of appellants, it is not necessary to address their other claims of error.

Shrout has cross-appealed from the Bath Circuit Court judgment, arguing the trial court erred:  (1) in directing a verdict on her defamation claim; (2) in directing a verdict on her wrongful use of an administrative proceeding claim; (3) in incorrectly instructing the jury on her workers' compensation retaliation claim; and (4) in excluding a statement from a co-worker that he was going to be fired for filing a workers' compensation claim.

As to claims of error one and two,

> [o]ur directed-verdict standard of review is well settled. First of all, when presented with a motion for directed verdict, a trial court must draw all fair and reasonable inferences from the evidence in favor of the party opposing the motion.  As a reviewing court, we must ascribe to the evidence all reasonable inferences and deductions which support the claim of the prevailing party. . . .  The judgment of the trial court in such matters will only be substituted when clearly erroneous.  In the end, a trial court should only grant a directed verdict when there is a complete absence of proof on a material issue or if no disputed issues of fact exist upon which

reasonable minds could differ.

*Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 285 (Ky. 2014), *as corrected* (Apr. 7, 2015) (internal quotation marks and citations omitted).

Turning to the defamation claim, the requisite elements of defamation are "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." RESTATEMENT (SECOND) OF TORTS § 558 *Elements Stated* (1977).

Here, because Shrout's complaint only alleged defamation against Balentine, only Balentine's alleged defamatory statements are at issue. According to Shrout, when Balentine called her into her office to discuss her drug test results, Balentine told her that she "was so high on meth that she could not believe that of me, that she ought to call the law and have me arrested."[4] Balentine made this statement in the presence of Jeff Boggs and Karen Bailey, two of Custom Food's managers. Boggs had investigated the forklift incident and requested that Shrout be drug tested and Bailey had accompanied Shrout to the testing center.

---

[4] While Shrout suggests additional defamatory statements based upon employee statements to her concerning her negative drug test, we consider any argument based upon these alleged additional statements to be waived. While arguing the motion for directed verdict, Shrout conceded on the record that the only statements at issue were those Balentine made in her office in the presence of Jeff Boggs and Karen Bailey.

-10-

Balentine tells the story differently. She testified that when Shrout returned from the drug screen she was already very upset, crying, and yelling, saying, "you're not going to tell me these results." When Balentine told her of the positive drug test results, Shrout argued the results must be incorrect. Shrout became angry and began cursing at Balentine. Balentine stated she was uncomfortable with Shrout's reaction and wanted Boggs and Bailey in the room. She further stated that Boggs and Bailey had been part of the events of that day and had informed her previously of some of the explanations for the positive drug test Shrout had made on the return from the clinic.

The trial court determined that Balentine's statements in the presence of Boggs and Bailey were privileged. We agree. "The determination of the existence of privilege is a matter of law." *Harstad v. Whiteman*, 338 S.W.3d 804, 810 (Ky. App. 2011) (citation omitted). "Unflattering language made within the scope of the employment relationship – and particularly '[i]n matters involving communications between employees in the chain of command[,]' – are qualifiedly privileged, and 'no recovery [for defamation] can be had.'" *Fortney v. Guzman*, 482 S.W.3d 784, 790 (Ky. App. 2015) (citations omitted). This is because "society benefits when employers, or others who share common interests, are permitted to discuss matters freely, even if those discussions are found to be based on erroneous beliefs or misinformation." *Toler*, 458 S.W.3d at 286.

However, "[a] qualified privilege can be lost if abused or exceeded." *Fortney*, 482 S.W.3d at 790 (citation omitted). "The burden of showing such abuse of privilege is the plaintiff's." *Toler*, 458 S.W.3d at 284. A plaintiff must show both malice and falsity to overcome the qualified privilege. *Id.* at 287. Abuse of the privilege may be shown by (1) "the publisher's knowledge or reckless disregard as to the falsity of the defamatory matter"; (2) the "publication of the defamatory matter for some improper purpose"; (3) "excessive publication"; or (4) "the publication of defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the occasion is privileged." RESTATEMENT (SECOND) OF TORTS § 596 *Common Interest*, cmt. a (1977).

Here, Shrout has presented no evidence that Balentine's statements were the result of malice. "With the qualified privilege, it is not so much *what* was said as it is *how* it was said." *Toler*, 458 S.W.3d at 284. Instead, Shrout's arguments pertain mainly to the falsity of Balentine's statements. However, she "was required to do more than assert that these statements were false; people are sometimes wrong without even suspecting it." *Harstad*, 338 S.W.3d at 813.

Adapting the words of the *Harstad* Court:

It was [Shrout]'s burden to present some evidence that would incline a reasonable person to believe that [Balentine]'s perception was not simply the product of mistaken observation, but the result of malice, i.e., some evidence that [Balentine] knew she was lying or making

-12-

> wholly unfounded statements without regard to their truth or falsity.

*Id.* Here, there is no such evidence. In fact, Shrout testified that she believed Balentine thought she was on drugs and terminated her because of that actual, if inaccurate, belief.

While Shrout is correct that "[t]he abuse-of-privilege question typically is one for the jury," *Toler*, 458 S.W.3d at 287, "a directed verdict is appropriate where there is no evidence of probative value to support an opposite result because [t]he jury may not be permitted to reach a verdict upon speculation or conjecture." *Id.* at 285 (internal quotation marks and citation omitted). Because there was no evidence of malice, the trial court was not clearly erroneous in granting Balentine's motion for directed verdict on Shrout's defamation claim.

Shrout next argues the trial court erred in granting a directed verdict on her claim for wrongful use of administrative proceedings.[5] We disagree. In *Martin*, 507 S.W.3d at 11-12, our Supreme Court set forth the elements of a claim for wrongful use of civil proceedings or malicious prosecution:

---

[5] As an aside, we have serious doubts whether Shrout has stated a cognizable claim for wrongful use of civil proceedings. Also known as malicious prosecution, this claim requires proof, among other things, that "the defendant initiated, continued, or procured a criminal or civil judicial proceeding, or an administrative disciplinary proceeding against the plaintiff[.]" *Martin v. O'Daniel*, 507 S.W.3d 1, 11 (Ky. 2016). Unemployment proceedings are not an "administrative disciplinary proceeding against the plaintiff." At least one court has declined to recognize such a claim under similar facts. *See Wilkinson v. Shoney's, Inc.*, 4 P.3d 1149, 1159 (Kan. 2000) (declining to recognize cause of action for malicious defense based upon an employer's challenge of a claim for unemployment compensation benefits).

-13-

A malicious prosecution action may be established by showing that:

1) the defendant initiated, continued, or procured a criminal or civil judicial proceeding, or an administrative disciplinary proceeding against the plaintiff;

2) the defendant acted without probable cause;

3) the defendant acted with malice, which, in the criminal context, means seeking to achieve a purpose other than bringing an offender to justice; and in the civil context, means seeking to achieve a purpose other than the proper adjudication of the claim upon which the underlying proceeding was based;

4) the proceeding, except in ex parte civil actions, terminated in favor of the person against whom it was brought; and

5) the plaintiff suffered damages as a result of the proceeding.

The trial court directed a verdict in favor of appellants, finding there was no evidence any action by appellants "continued" the proceedings. It specifically noted the lack of evidence from the Kentucky Division of Unemployment Insurance ("Division") showing that any action by appellants influenced its decision respecting Shrout's benefits. Shrout argues on appeal, as she did below, that Custom Food's submissions to the Division concerning her termination effectively "continued" the unemployment proceedings against her, delaying her benefits. She specifically points to the fact that Balentine had in the

-14-

past entered into settlement agreements with employees to not challenge their receipt of benefits, which she argues shows that Balentine (and thus Custom Food) was aware that responding to the Division's request for information would delay or prevent the receipt of benefits.

We agree with the trial court that Shrout failed to present evidence concerning this element of her wrongful use of civil proceedings claim. There is no evidence in the record that Custom Food's submissions to the Division delayed or affected its decision concerning Shrout's benefits in any way. Shrout seems to believe that if Custom Food had not responded to the Division's requests for information concerning Shrout's termination she would have automatically qualified for benefits. However, "[n]o Kentucky authority stands for the proposition that if an employer fails to contest a worker's claim for unemployment benefits, the worker *must* be awarded unemployment benefits." *Kentucky Unemployment Ins. Comm'n v. Watts*, 407 S.W.3d 569, 574-75 (Ky. App. 2013).

Further, Shrout's own submissions to the Division contain substantially the same information as Custom Food's. Thus, without further evidence, she cannot prove that it was Custom Food's action, as opposed to her own, that continued the proceeding. As noted above, "a directed verdict is appropriate where there is no evidence of probative value to support an opposite result because [t]he jury may not be permitted to reach a verdict upon speculation

-15-

or conjecture." *Toler*, 458 S.W.3d at 285 (internal quotation marks and citation omitted). Without evidence that appellants continued the unemployment proceeding, Shrout could not prove an essential element of her claim and directed verdict was proper.

Next, Shrout alleges the trial court's instruction on her workers' compensation retaliation claim misled the jury into believing she had to prove she was pursuing a workers' compensation claim prior to being terminated, rather than simply intending to pursue such. We review alleged errors in jury instructions *de novo. Lawson v. Commonwealth*, 425 S.W.3d 912, 915 (Ky. App. 2014) (citations omitted). The trial court's instruction provided in relevant part:

> You will find for Stella Shrout on her Workers'
> Compensation Retaliation claim if you are satisfied from
> the evidence that: Plaintiff was pursuing a Workers'
> Compensation claim at the time she was terminated . . .
> [and] Plaintiff's pursuit of a Workers' Compensation
> claim was a substantial and motivative factor in
> Defendants' decision to discharge Stella Shrout.

Shrout now contends the trial court's instruction should have stated that Shrout "intended to file and pursue" a workers' compensation claim, citing *First Prop. Management Corporation v. Zarebidaki*, 867 S.W.2d 185 (Ky. 1993). We find Shrout's argument is not preserved for appellate review because Shrout never argued the suggested language to the trial court; neither is it located in her

-16-

tendered instructions. *See* CR[6] 51(3); *Sand Hill Energy, Inc. v. Smith*, 142 S.W.3d 153, 163 (Ky. 2004) (citation omitted) (noting that an allegation of instructional error is not preserved for appellate review when "the omitted language or instruction was not contained in the instruction tendered to the trial court; i.e., when the allegation of error was not presented to the trial court *at all*[.]").

Finally, Shrout argues the trial court erred in excluding a co-worker's statement to her that he was going to be fired for pursuing a workers' compensation claim. Shrout argues this evidence is relevant to her state of mind concerning why she was afraid to file a workers' compensation claim. A trial court's evidentiary rulings are reviewed for abuse of discretion. *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 577 (Ky. 2000) (citations omitted).

At trial, Shrout attempted to testify that a co-worker, Ernie Anderson, told her he was going to be fired for filing a workers' compensation claim. Appellants objected that the testimony was inadmissible hearsay and Shrout countered that the statement went to her state of mind. The trial court excluded the statement stating, "if he's not going to be a witness, I'm going to sustain the

---

[6] Kentucky Rules of Civil Procedure.

-17-

objection." We interpret the trial court's ruling as holding the statement was hearsay[7] and find no error in excluding it.

Hearsay evidence is not admissible unless it qualifies for an exception. KRE[8] 802. While Shrout argues the statement goes to her state of mind, "KRE 803(3), by its very language, only applies to prove the state of mind of the *declarant*[.]" *Moseley v. Commonwealth*, 960 S.W.2d 460, 462 (Ky. 1997).

Based upon the foregoing, the Bath Circuit Court's judgment is reversed as to the appeal and affirmed as to the cross-appeal, with directions for the trial court to set aside the jury verdict and enter a new judgment in favor of Custom Food and Balentine.

ALL CONCUR.

BRIEFS FOR APPELLANTS/
CROSS-APPELLEES:

Jacinta F. Porter
Keith Moorman
Lexington, Kentucky

BRIEFS FOR APPELLEE/CROSS-
APPELLANT:

Laraclay Parker
J. Dale Golden
Alexandra DeMoss-Campbell
Lexington, Kentucky

---

[7] Prior to trial, the court granted appellants' general motion *in limine* to exclude evidence of other Custom Food employees allegedly being terminated for workers' compensation retaliation based upon Shrout's lack of personal knowledge.

[8] Kentucky Rules of Evidence.